INTERNATIONAL UNION OF OPER-
ATING ENGINEERS, LOCAL 150,
AFL–CIO, Plaintiff–Appellee,

v.

CENTOR CONTRACTORS, INC., John
Sanicki and Craig Schmidt d/b/a Soil
Contractors, an Illinois Partnership,
Defendants–Appellants.

No. 86–1769.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1987.

Decided Sept. 22, 1987.

Richard D. Boonstra, Chicago, Ill., for defendants-appellants.

Alan H. Auerbach, Baum & Sigman, Ltd., Chicago, Ill., for plaintiff-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Appellants Centor Contractors, Inc. ("Centor"), and John Sanicki and Craig Schmidt, its two former shareholders, appeal from a summary judgment of the district court enforcing an arbitration award under a collective bargaining agreement with the plaintiff, International Union of Operating Engineers, Local 150, AFL–CIO ("the Union"). The district court held that the defendants' defenses to the award were in the nature of grounds to vacate the award and, as such, were untimely asserted. Additionally, the district court held that Soil Contractors, an Illinois partnership, was liable on the award as either the successor or the alter ego of Centor. Because Soil Contractors is not a corporation and because the individual defendants were its only partners at the relevant time, the liability of the partnership was a liability of the partners by operation of law. For the reasons stated herein, we affirm.

I

The individual defendants were the only two shareholders of Centor, which was an employer under a collective bargaining agreement with the union. In January of 1985, Centor lost a grievance in arbitration before a "Joint Grievance Committee" made up of labor and management representatives from the soil contracting industry (although there were no representatives from Centor). The award was finalized on February 27, 1985, after Centor failed to appear at a subsequent hearing at which the committee indicated it would receive any additional evidence Centor had to submit. An additional grievance was also considered at this time and resolved in favor of the Union.

In March of 1985, the defendants dissolved the employer corporation and operated as a partnership to finish up the work of the corporation and pay off its creditors. Noticeably absent from the latter category, as far as the defendants were concerned, was the plaintiff Union. In a letter to their customers, the defendants attributed the dissolution to "labor difficulties" and said that they would not be operating "under the name" of the dissolved company until those problems were resolved. Both the corporation, and the partnership which succeeded it were essentially bookkeeping operations which handled the payroll and other office work of what had previously been two competing excavation companies of the individual defendants, which joined forces when the corporation was formed. Neither Centor nor the partnership owned any equipment, although all employees were paid by them.

On April 15, 1985, when Centor refused to comply with a demand that it abide by the arbitration award, the Union filed this suit in the district court under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the award. The defendant Centor did not answer the complaint until July 11, 1985, and stated that the award was invalid because the Joint Grievance Committee refused to allow it to be represented by counsel at the January grievance hearing (Individual defendant Sanicki appeared at that hearing with his attorney. The attorney was allowed to attend, but not to address the committee.). In September, the plaintiff moved to amend to add the individual defendants as parties. In addition to contesting the validity of the award, the individual defendants contended they could not be held liable on the award because the partnership was not a successor to Centor. The district court granted the Union's motion for summary judgment against all defendants.

## II

The district court held that: (1) the challenges to the validity of the award advanced by the defendants were barred because they were not made within 90 days of the award as required by *Plumbers Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266 (7th Cir.1985); and (2) the partnership was a successor to Centor, so that the individual defendants could be held liable on the arbitration award. We find both of the district court's conclusions unexceptionable and fully supported by the uncontradicted facts presented to it.

## A

■ We first consider the timeliness issue. It is well settled, in this circuit at least, that failure to challenge an arbitration award within the applicable limitations period renders the award final. Thus, those challenges in the nature of grounds to vacate the award may not be asserted as defenses to a subsequent enforcement action. *Domas*, 778 F.2d at 1268; *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). We have little difficulty classing the challenge made by the appellants, that the award was invalid because their counsel was not given an opportunity to conduct the arbitration, as one which, if valid at all, could have been asserted in an action to vacate the award. In *Domas*, for example, we declined to consider arguments that an award was "arbitrary and capricious" and that it contravened statutory provisions contained in the Employees Retirement Income Security Act of 1974 ("ERISA") (codified at scattered sections of 29 U.S.C.). Like the challenges in *Domas*, appellants' challenges are to the basic underlying validity of the award. The relief they sought by way of defense was to nullify the award. Under our cases, the only avenue available for such relief is a timely suit to vacate.

On appeal, the defendants attempt to tie their substantive challenge to the arbitration award (i.e., that the company was precluded from being represented by counsel) with an attempt to avoid the 90–day rule of *Domas*.[1] They argue that since the "right" to be represented by counsel is in the same Illinois Statute from which the *Domas* court borrowed the time limitation, it necessarily qualifies that time limitation. Appellant's contention is wide of the mark.

■ The fact that the 90–day limit was borrowed from a state statute that provides for a right to counsel is irrelevant. As the *Domas* decision itself indicates, the limitation period only is borrowed, as a matter of *federal* law. Specifically, we noted that language in the Illinois Arbitration Act excluding collective bargaining agreements did not preclude our borrowing

---

1. We note that the Eleventh Circuit has recently decided that a uniform three-month limitation period, borrowed from the United States Arbitration Act, 9 U.S.C. §§ 1 *et seq.* is appropriate to actions of this type. *American Postal Work-*

*ers Union v. United States Postal Service*, 823 F.2d 466 (11th Cir.1987). We need not reconsider our earlier cases adopting the period from the Illinois statute, however, because, under either period, appellants' claims were untimely.

of the 90–day period to apply to federal causes of action under section 301. We noted that our task was "to select the most analogous state statute of limitations, and the Illinois legislature's apparent intent to preserve pre-Act federal timeliness provisions and grounds for vacating does not affect our conclusion that the Illinois 90–day limitation period is closely analogous to the situation here." 778 F.2d at 1269 n. 1. The Supreme Court has recently confirmed that, once an analogous period of limitation is selected, reference to the statute from which it was borrowed is at an end. *See West v. Conrail, Inc.,* ── U.S. ──, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987) (declining to extend borrowing analysis of *DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), to include service provision of borrowed statute). There the Court noted:

> Inevitably our resolution of cases or controversies requires us to close interstices in federal law from time to time, but when it is necessary for us to borrow a statute of limitations, we borrow no more than necessary.

*Id.,* 107 S.Ct. at 1542 (footnote omitted).

■ Neither is there any other reason that a challenge such as appellants' should be exempt from the 90–day limitation period. Appellants were in no way prevented from seeking an attorney's advice once the award was rendered (or for that matter during the proceedings). Thus, the claim that they could not be expected to know about the 90–day rule carries little weight. In any event, such an argument assumes that ignorance of the time limits for seeking vacation of an arbitration award will justify judicial abrogation of those time limits. This is not the law, even for those parties who, for one reason or another, proceed without counsel.

As defendants did not timely move to vacate the award, we need not decide whether, as a substantive matter, the denial of counsel would be sufficient ground to vacate the award. *Cf. Valentin v. United States Postal Service,* 787 F.2d 748 (1st Cir.1986) (suggesting a negative answer).

## B

Only slightly more troublesome is the question of whether the district court erred by holding that no genuine issue of material fact existed regarding whether the partnership was a successor to or the alter ego of Centor, thus making appropriate the imposition of liability on the individual defendants. We conclude that it did not.

We begin by noting that the alter ego and successorship inquiries are distinct. Whether one employer is a successor of another depends on a number of factors, some of which were recently enunciated by this court, including whether:

> [a]  there has been a substantial continuity of the same business operations; [b]  the new employer uses the same plant; [c]  the same or substantially the same work force is employed; [d]  the same jobs exist under the same working conditions; [e]  the same supervisors are employed; [f]  the same machinery, equipment, and methods of production are used; and (g)  the same product is manufactured or the same service [is] offered....

*NLRB v. Jarm Enterprises, Inc.,* 785 F.2d 195, 200 (7th Cir.1986) (quoting *Premium Foods,* 260 NLRB 708, 714 (1982) enf'd, 709 F.2d 629 (9th Cir.1983)) (alterations the court's).

Of course, "[t]here is [not,] and can never be, however, a formal definition of a successor.... [T]he determination in each case involves the facts and the labor policy at issue." *Id.* (alterations our own) (citation omitted).

■ By contrast, the alter ego doctrine focuses on "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Penntech Papers, Inc. v. NLRB,* 706 F.2d 18, 24 (1st Cir.1983). In sum " '[u]nlawful motive or intent are critical inquiries in an alter ego analysis....' " *Iowa Express Distribution, Inc. v. NLRB,* 739 F.2d 1305, 1311 (8th Cir.1984) (quoting *Penntech Pa-*

*pers*, 706 F.2d at 24) (comparing alter ego and single employer doctrines).[2]

■ Both of the doctrines are usually applied to determine whether one employer is required to bargain with a union that represented a former employer's employees. However, we see no reason the same principles should not be applicable to enforcement of arbitration awards that are "part and parcel of the collective bargaining process itself." *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960).

■ The district court analyzed the case largely in successorship terms.[3] We see no reason to disturb its conclusions on the successorship issue. The only evidence[4] before the district court established that the defendant Centor had been formed by the individual plaintiffs as a "paper holding company" to handle payroll and other administrative tasks for their formerly competing soil contracting businesses. It owned no equipment and essentially was used to handle the money from the operating companies. The individual defendants each owned 50% of Centor. As officers of Centor, they entered into a collective bargaining agreement with the plaintiff union. Two weeks after receiving notice that Centor had lost the arbitration, they sent a letter on Centor stationery to its customers (who had formerly been customers of the individual businesses), which concluded:

> Because of union labor problems we will not be working under the name Centor Contractors, Inc. this year. Until this matter is resolved we will work under the original "Soil Contractors of the South Side," Century Topsoil and Orland Soil Contractors.

Sanicki Dep.Ex. 17.

The letter also indicated that "we will operate two dirt fields and one yard this year as we have in the past" and contained a common price list and other indications that the two would continue business as usual, together (for example, the letter was entirely phrased in the first person plural).

Although Centor was dissolved on the first of March (two weeks before the letter), Sanicki and Schmidt continued to operate the business to finish the jobs Centor had contracted. Of 14 employees who had previously been on the Centor payroll, 8 continued to work for Soil Contractors. Soil Contractors had the same address and telephone number as had Centor (and the two individual businesses). Sanicki and Schmidt each owned 50% of Soil Contractors. Sanicki testified in his deposition that Soil Contractors, too, was a "paper holding company" which performed essentially the same function as had Centor.

Under the factors enunciated in *Jarm Enterprises*, we have little difficulty concluding that, at least during the relevant time period, Soil Contractors was the successor of Centor. The fact that Sanicki later got out of the soil contracting business by selling his individual company to a third party (although he retained an interest in Soil Contractors) does not alter this result.[5]

---

2. The single employer doctrine, in contrast to the successorship and alter ego doctrines, is used to determine whether two presently existing entities are in fact so related that they should be treated as one employer for purposes of collective bargaining.

3. We note that the collective bargaining agreement adopted by the parties to this case expressly bound their "successors and assigns." R. 16, Ex. B. at 1.

4. As they did in the district court, appellants have in this court made numerous factual assertions without citation to the record. In fact, the statement of facts in appellants' brief does not contain a single citation to the record. We need not decide whether these omissions, both here and in the district court, provide an independent ground for affirmance, however. Our review of the record convinces us that appellants' factual assertions lack not only citation to the record, but support therein as well. We also note that appellants boldly assert that genuine issues remain for trial. However they have not identified any such issues either here or in the district court. It is axiomatic that a party opposing a properly supported summary judgment motion may not merely rest on the denials of his pleading. Fed.R.Civ.P. 56(e). Reliance on bare unsupported assertions in briefs and memoranda certainly fare no better.

5. In imposing liability on the individual defendants, the district court did not, as appellants suggest, "pierce the corporate veil." After they

Additionally, we conclude that Soil Contractors was the alter ego of Centor. Particularly damning is the letter quoted above, which basically stated that the defendants were dissolving Centor to avoid their obligations to the Union. Sanicki's deposition testimony was of similar tenor. Additionally, large sums of cash were transferred out of Centor to the individual companies shortly before its dissolution. The inescapable conclusion from the record before us is that Centor was dissolved and Soil Contractors substituted in its place in an attempt to evade the arbitration award. Federal labor policy cannot tolerate such easy avoidance of collective bargaining obligations.[6]

AFFIRMED.

dissolved Centor, there was no veil left. The court merely held the successor partnership liable, and, by operation of law, its partners. Appellants have made no argument in this court that liability should have been imposed on their separate corporations, rather than on them individually.

6. At oral argument in this case, appellee orally moved for the imposition of sanctions under Fed.R.App.P. 38. While we realize that we have the power to impose sanctions on our own motion and thus the timing of the request does not absolutely bar us from considering the question, we nonetheless hesitate to impose sanctions where the party against whom sanctions are sought has had no real opportunity to argue against their imposition. Accordingly, in our discretion, we decline to impose sanctions in this case.