GATEWAY STRUCTURES, INC.; John A. Langford, General Contractor; Sunnyside Enterprises; Countrywood Homes; Van Dyke Estates; North American Investments; L.D.R., Inc.; and Inland Development, Plaintiffs,

v.

The CARPENTERS' 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, and Sequoia District Council of Carpenters, and Carpenters Union Local No. 701, unincorporated associations, Defendants.

GATEWAY STRUCTURES, INC.; John A. Langford; and North America Investments, Petitioners,

v.

CARPENTERS' 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO; and Carpenters Local No. 701, unincorporated associations, Respondents.

CARPENTERS' 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD, Cross–Petitioner,

v.

GATEWAY STRUCTURES, INC.; John A. Langford; North American Investments; David A. Dyck; Larry Moore; and John C. Hempel, Jr., Cross–Respondents.

Nos. C–83–3352 RFP, C–87–3106 RFP.

United States District Court, N.D. California.

Dec. 2, 1987.

Spencer H. Hipp, Littler, Mendelson, Fastiff & Tichy, Fresno, Cal., for plaintiffs.

Blythe Mickelson, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for defendants.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

PECKHAM, Chief Judge.

### INTRODUCTION

Plaintiffs Gateway Structures (Gateway), North American Investors (NAI), and John Langford have petitioned this court to vacate a $165,786.09 arbitration award entered jointly against them in favor of the defendant Carpenters' Unions. The Unions have cross-petitioned for enforcement against the three original plaintiffs. The Unions have also cross-petitioned against three shareholders of Gateway who were not named in the arbitration award: David Dyck, Larry Moore, and John Hempel. The plaintiffs now move to dismiss the petition for enforcement as against these three individuals. The Unions respond with a motion for summary judgment against Gateway, the three Gateway shareholders listed above, and John Langford in his capacity as a Gateway shareholder. The Unions have also moved to dismiss Gateway's related declaratory judgment action (C–83–3352), claiming that this court lacks subject matter jurisdiction.

### BACKGROUND

The underlying labor dispute between the parties arose during the construction of a Fresno shopping center in 1981–82. Plaintiff North American Investors (NAI) served as general contractor for the overall project. Plaintiff Gateway was created to handle the construction of a Von's market, because the financiers of that particular project required the use of union labor and NAI used non-union labor. On July 7, 1981, a "pre-hire agreement" [1] was signed by plaintiff John Langford on behalf of plaintiff Gateway, and by the defendant Carpenters' Unions.

Soon after the agreement was signed, a dispute arose as to the proper scope of its application. The defendant Unions contend that several companies who had not been parties to the agreement, including NAI (collectively, the non-signatory plaintiffs), were in fact managed jointly with Gateway. The defendants therefore claimed that the non-signatory plaintiffs were bound by the terms of the pre-hire agreement under either the single employer or the alter ego doctrines. The plaintiffs asserted that they were distinct entities and that therefore only Gateway was bound by the agreement. Nevertheless, on October 8, 1981, the non-signatory plaintiffs allegedly attempted to repudiate any agreement to which they may have been bound. Because Gateway was required to use union labor, it could not and did not attempt to repudiate the pre-hire agreements until December 1, 1982, when work was completed on Von's Market.

The Unions filed a grievance on August 17, 1981, which was referred to arbitration. Gateway appeared and contested the Unions' claims before the arbitrator, but John Langford and the non-signatory plaintiffs did not. On May 12, 1982, the arbitrator found that Gateway, Langford, and the non-signatory plaintiffs were under joint management. Therefore, the arbitrator concluded that all these plaintiffs were bound by the pre-hire agreement and owed the unions damages for back pay. The amount of back pay owed was left undecided. The issue of repudiation apparently was not raised in the arbitration proceedings, since Gateway was the only plaintiff involved and it had not yet sought to repudiate the agreement.

---

**1.** Under 29 U.S.C. § 158(f), an employer in the construction industry can enter into a pre-hire agreement with a union before any employees have been hired to work on a project. A showing that the union has the support of a majority of the as yet non-existent employees is therefore not required. Pre-hire agreements can be repudiated by either party, however, until and unless the union attains majority status. If the union does receive majority support, the pre-hire agreement immediately and automatically converts into a binding collective bargaining agreement which cannot be unilaterally repudiated. *See United Brotherhood of Carpenters & Jointers v. Endicott Enterprises, Inc.,* 806 F.2d 918, 921 (9th Cir.1986).

On August 11, 1982, Gateway filed Civ. No. 82–4235 RFP in which it sought an order vacating the first arbitration award. The Unions cross-petitioned for confirmation of the award. Gateway was the only plaintiff involved in this case. The arbitrator's ruling was affirmed by this court on January 25, 1984, and by the Ninth Circuit on December 26, 1985. *See Gateway Structures, Inc. v. Carpenters' 46 Northern California Counties Conference Board,* 779 F.2d 485 (9th Cir.1985). Further arbitration proceedings culminated on April 1, 1987 in an award of $165,786.09 entered jointly against Gateway, Langford, and NAI. The plaintiffs are seeking to vacate—and the defendants, to enforce—this award in C–87–3106 RFP.

The Unions started down the second track of this dispute by filing an unfair labor practice (ULP) charge with the NLRB. On October 1, 1981, the NLRB deferred consideration of the ULP charge pending the outcome of arbitration. The NLRB eventually dismissed the ULP charge on February 6, 1985, for failure to prosecute. The Unions contend that they did not pursue the ULP charge because their rights were sufficiently vindicated by the arbitration.

On track three is the unit clarification (UC) petition which Gateway filed with the NLRB on October 13, 1981. In its petition, Gateway requested that the NLRB decide whether the non-signatory plaintiffs were bound by the pre-hire agreement. At the NLRB's request, the UC petition was withdrawn without prejudice on December 3, 1981. The NLRB's rationale for derailing the UC petition is currently a crucial point of contention. Gateway asserts that the NLRB was unable to consider the UC petition while the ULP charge was pending. Once the "blocking charge" was dismissed, Gateway filed another UC petition dated May 31, 1985. This petition was dismissed because Gateway had been dissolved for over a year. The Unions contend that the ULP charge had nothing to do with the NLRB's refusal to act on the UC petition. According to the Unions, the petition was withdrawn because it raised issues which could only be resolved by a petition for an election.

## JURISDICTION OVER THE DECLARATORY JUDGMENT ACTION

The declaratory judgment action, filed by Gateway on July 15, 1983, represents the fourth track of this dispute. In that case, Gateway, Langford, and the non-signatory plaintiffs seek a declaratory judgment that they repudiated any pre-hire agreement which may have existed between them and the defendant Unions. On July 2, 1985, this Court held that it had no jurisdiction under Section 301 of the Labor Management Relations Act[2] because plaintiffs had not alleged that a collective bargaining agreement had actually been breached. Disputes concerning whether or not a binding collective bargaining agreement exists are generally to be resolved by the National Labor Relations Board (NLRB). The Plaintiffs appealed this decision.

On March 3, 1986, the Ninth Circuit carved out a narrow exception to the rule that Section 301 jurisdiction extends only to cases involving breaches of collective bargaining agreements. In *John S. Griffith Construction Co. v. United Brotherhood of Carpenters and Joiners of Southern California,* 785 F.2d 706 (9th Cir.1986), a divided panel of the Ninth Circuit held that the district courts have jurisdiction to resolve disputes concerning the existence of collective bargaining agreements *"in those few instances in which the Board either will not, or cannot, decide."* *Id.* at 711 (emphasis in original). Gateway's declaratory judgment action was remanded for reconsideration in light of the *Griffith* decision. We have been directed to determine:

> whether [Gateway's] filing of a unit clarification petition, rather than a representation petition or a petition for election,

**2.** Section 301 of the Labor Management Relations Act provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties…." 29 U.S.C. § 185 (1982).

satisfies the exhaustion requirement of *Griffith.*

*Gateway Structures, Inc. v. Carpenters 46 Northern California Counties Conference Board,* 804 F.2d 145 (9th Cir.1986). Both sides have moved for summary judgment on the jurisdictional issue. We need not reach the difficult issue of whether the *Griffith* exhaustion requirement has been satisfied, however, as several subsequent cases make it clear that this court has jurisdiction.

█ A plaintiff in a Section 301 action normally must allege a breach of a collective bargaining agreement in order to establish jurisdiction. Since Gateway's complaint alleges no such breach, the Unions argue that this court lacks jurisdiction over the declaratory judgment action. However, jurisdiction in a declaratory relief action is *not* determined on the basis of the complaint for declaratory relief. The appropriate inquiry is whether the court would have jurisdiction over a hypothetical coercive suit between the same parties. *See United Food & Commercial Workers v. Food Employers Council,* 827 F.2d 519, 523 (9th Cir.1987). Since this court would have jurisdiction over a suit by the Unions for breach of the pre-hire agreement, it equally well has jurisdiction over the plaintiffs' declaratory judgment action. This is true even though the plaintiffs are seeking a declaration that they have a valid defense to the hypothetical coercive suit. *See* 10A C. Wright & A. Miller, *Federal Practice & Procedure* § 2767 (1983); *Developments in the Law—Declaratory Judgments,* 62 Harv.L.Rev. 787, 803 (1949) ("[A] declaratory action seeking to test a defense is triable in the federal courts provided this defense would normally arise in answer to a complaint which itself would properly raise a federal question.").

█ The Unions' papers also raise the defense of primary jurisdiction. Primary jurisdiction is a doctrine of judicial restraint, under which courts that have jurisdiction sometimes choose to defer to administrative agencies. *See* 4 K. Davis, *Administrative Law Treatise,* § 22.1 (1983). Several recent cases make it clear that the defense of primary jurisdiction does not bar this action. In *United Brotherhood of Carpenters & Jointers v. Endicott Enterprises,* 806 F.2d 918 (9th Cir.1986), a union brought suit against an employer for breach of a pre-hire agreement. The employer raised the defense that the union had never attained majority status and that therefore the employer had been able effectively to repudiate the agreement. The Ninth Circuit held that it had been proper for the district court to rule in favor of the defendant employer, concluding that "the doctrine of primary jurisdiction does not apply in determining a union's *past* representational status." *Id.* at 921 (emphasis in original). Similarly, in an action brought by an employer seeking a declaratory judgment that it had no duty to arbitrate a grievance because it had repudiated a pre-hire agreement, the Ninth Circuit flatly stated:

> The district court had jurisdiction to determine both whether [the employer] repudiated its collective bargaining agreements with the unions and whether, based on the union's representational status during the period before the repudiations, the repudiations were effective.

*Mesa Verde Construction Co. v. Northern California District Council of Laborers,* 820 F.2d 1006 (9th Cir.1987). The *Endicott* and *Mesa Verde* opinions mandate the conclusion that the defense of primary jurisdiction is no bar to this action. The NLRB is no longer interested in resolving this dispute, so there is no need to defer to it under the doctrine of primary jurisdiction. Accordingly, the Defendants' motion to dismiss the declaratory judgment action must be denied.

In C–87–3106 RFP, the plaintiffs are seeking to vacate the arbitration award recently entered jointly and severally against Gateway, NAI, and John Langford. The Unions have counterclaimed for enforcement. Thus the coercive action so long anticipated by Gateway is at last before the court. In order to resolve C–87–3106, it is quite likely that this court will have to determine (1) whether the arbitrator had jurisdiction over Langford and NAI

on the theory that they were in privity with Gateway, and (2) whether any or all of the plaintiffs effectively repudiated the pre-hire agreements. These are the same issues raised by the plaintiffs in their declaratory judgment action. The cases will therefore be consolidated for the purposes of all future proceedings.

## MERITS OF ENFORCING THE ARBITRATION AWARD

In C–87–3106, the plaintiffs have moved to dismiss the cross-petition as against Dyck, Moore, and Hempel based on a "total lack of process" with respect to these individuals. Plaintiffs' Opening Brief at 2. These three individuals concededly were not parties to the arbitration, nor is the arbitration award by its terms enforceable against them.

The Unions respond that the liability of these three individuals is based on a different theory. Because Gateway has dissolved, the Unions maintain that they are entitled to recover any liability owed by Gateway either from the directors of Gateway who voted to dissolve the corporation (Langford, Dyck, and Hempel), or from Gateway's shareholders (Langford, Dyck, Hempel and Moore) who assumed the liabilities of the corporation upon dissolution.[3]

### 1) Summary Judgment Against Gateway

■ In order to reach the issue of shareholder liability, this court must first determine whether summary judgment is warranted against Gateway itself. It is hard to escape the conclusion that summary judgment is appropriate, based on the facts that (1) Gateway has always been a party to the arbitration, (2) the arbitrator has found against Gateway, and (3) as noted above, this court and the Ninth Circuit have already held that the arbitration proceedings are binding on Gateway. Gateway argues that summary judgment is inappropriate because material questions of fact exist as to whether the arbitrator cor-

rectly calculated the damage award. This argument seriously misapprehends the scope of this court's review of the arbitration award.

Where the decision involves contractual interpretation, we must defer as to any decision which draws its essence from the agreement. Therefore, if on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the decision is ambiguous, *and notwithstanding the erroneousness of any factual findings or legal conclusions,* absent a manifest disregard for the law. *George Day Construction Co. v. United Brotherhood of Carpenters and Joiners, Local 354,* 722 F.2d 1471, 1477 (9th Cir. 1984) (emphasis added, citations omitted). Under this standard, the arbitrator's award clearly is enforceable against Gateway.

■ Gateway also argues that the award of attorneys' fees was made with manifest disregard for the terms of the Carpenters Master Agreement for Northern California, which was incorporated by reference into the pre-hire agreement. The Master Agreement states that "[a]ny party who fails or refuses to comply with ... an award of the Arbitrator ... shall be responsible for reasonable attorneys' fees for the filing and trial of any petition to confirm and enforce said [award]." Carpenters Master Agreement for Northern California § 51.13. Gateway characterizes this provision as an express limitation on the ability of the arbitrator to award attorneys' fees: fees may be awarded for trial work *only.* The arbitrator gave Section 51 a broader reading, however, when he concluded that Gateway was liable for $15,-228.75 worth of attorneys' fees. The arbitrator's reading is a plausible one, because Section 51.13 contains no language which expressly limits fee awards, and because another provision of the agreement gives the arbitrator broad discretion to "fashion an appropriate remedy to resolve the [sub-

---

**3.** These motions do not raise the issues of Langford's direct liability under the arbitration award or as a signatory to the pre-hire agree-

ment. Likewise, the liability of NAI is not presently before the court.

mitted] issue including ... attorneys' fees." *Id.* at § 51.5(d). This court must therefore defer to the arbitrator's interpretation of the Master Agreement.

### 2) Statute of Limitations

Before reaching the merits of the Unions' claims against the directors and shareholders of Gateway, it is necessary briefly to consider the plaintiffs' contention that any such action is time-barred. Under California law, actions against directors and shareholders must be brought within three years of the date upon which the liability was created. *See* Cal.Code Civ. Proc. § 359 (Deering 1972). Plaintiffs argue that this requirement was not met in the present case because Gateway dissolved in April of 1984 and the cross-petition naming the individual shareholders was not filed until June 30, 1987.

The Unions respond that the statute was tolled both during Gateway's appeal of this court's prior order, and during the subsequent arbitration proceedings. Under California law, a statute of limitations is tolled when "it is not possible to bring an action to trial pending determination of an appeal in a related case." *Hoover v. Galbraith,* 7 Cal.3d 519, 526, 498 P.2d 981, 985, 102 Cal.Rptr. 733, 737 (1972). In *Hoover,* the California Supreme Court allowed a judgment creditor to proceed against the directors of a corporation outside the three year limitations period of Cal.Code Civ. Proc. § 359, because the corporation's appeal of the prior case had tolled that statute. Thus both the general language and the specific holding of *Hoover* strongly support the Unions' position.

At the time that *Hoover* was decided, California law prohibited creditors from bringing actions against directors or shareholders until they had reduced their claims against the corporation to a final judgment. This prohibition was removed in 1977. *See* Cal.Corp.Code §§ 316(c), 2009(b) (Deering 1977) (allowing creditors to sue directors and shareholders "whether or not they have reduced their claims to judgment"). The plaintiffs seize on this change of law as a means for distinguishing *Hoover;* in-

deed, they seek to rely on *Hoover* for the proposition that the statute of limitations will be tolled *only if* a party is legally disabled from bringing a claim pending an appeal in a related case. The *Hoover* opinion does not support this proposition. *Hoover* simply states that the statute of limitations will be tolled if a party is barred from bringing a claim while a related appeal is pending. Neither *Hoover* nor any other case cited by the plaintiffs states that this is the *only* situation in which the statute will be tolled. The Unions' ability to bring its action against Gateway's shareholders to trial was contingent upon the result of Gateway's appeal. That is all that is required under California law to toll the statute of limitations. Consequently, the Unions' claim against Gateway's shareholders is not time-barred.

### 3) Liability of Directors and Shareholders

The Unions' motion for summary judgment is based on the alleged impropriety of Gateway's dissolution. Gateway was dissolved in April of 1984, three months after this court upheld the arbitrator's initial determination against it. Gateway, which allegedly had assets of only $800, *see* Declaration of John A. Langford at 2, made no effort to satisfy its obligation to the Unions prior to dissolving. The Unions therefore argue that the directors and shareholders of Gateway are liable to the unions for the total amount of the arbitration award.

The Unions have not established that the directors' actions in dissolving Gateway were wrongful. Under California law, corporate directors can be held liable if they approve the "distribution of assets to shareholders after institution of dissolution proceedings of the corporation, without paying or adequately providing for all known liabilities of the corporation." Cal. Corp.Code § 316(a)(2) (Deering 1977). The certificate of dissolution filed by Gateway states that the known liabilities of Gateway have been "adequately provided for by the assumption thereof by the shareholders." *See* Declaration of Blythe Mickelson, Exh. F. This method of providing for liabilities

is expressly defined as adequate by Cal. Corp.Code § 2005(a) (Deering 1977). Thus the directors did not violate Cal.Corp.Code § 316(a)(2). Finally, even had the directors wrongfully dissolved Gateway, their liability would be limited to the amount of the wrongful distribution, *see* Cal.Corp.Code § 316(d) (Deering 1977), which in this case is claimed to be nominal.

Under the terms of the certificate of dissolution, Gateway's shareholders clearly assumed the outstanding debts of the corporation. The key question at this juncture is the *extent* of that assumption of liability. The Unions correctly point out that by the terms of the certificate of dissolution the assumption of liability would appear to be unlimited and absolute:

> The known debts and liabilities of the corporation have been paid or adequately provided for by the assumption thereof by the shareholders of the corporation, to wit: DAVID A. DYCK, JOHN A. LANGFORD, LARRY MOORE and JOHN C. HEMPEL, JR.....

Declaration of Blythe Mickelson, Exh. F. The Unions argue that such an unlimited assumption of liability is required before a California corporation may be lawfully dissolved.

█ The Unions' argument is not persuasive as a matter of law or as a matter of common sense. In order to dissolve a corporation, California law requires only that the directors certify that a corporation's "known debts and liabilities have been actually paid, or adequately provided for, or paid or adequately provided for *as far as its assets permitted.*" Cal.Corp. Code § 1905 (Deering 1977) (emphasis added). Thus a corporation need only provide for liabilities to the extent that it has assets. Given this legal framework, it does not follow that the boilerplate language of the certificate of dissolution indicates that Gateway's shareholders intended to assume unlimited liability. That the shareholders intended to assume only limited liability is borne out by the terms of an Assumption of Liability signed by the

shareholders. In that document, it is clearly stated that:

> in order to complete the winding up and dissolution, DAVID A. DYCK, JOHN LANGFORD, JOHN HEMPEL and LARRY MOORE, as shareholders of the corporation, hereby agree that to the extent of the property and assets received by them in distribution by the corporation pursuant to the winding up and dissolution, [they] hereby assume and agree to discharge the known liabilities and obligations of the corporation not in fact discharged or otherwise adequately provided for in the winding up and dissolution.

Declaration of Jeffrey Wall, Exh. 2. Thus summary judgment against the above named individuals is appropriate, but only to the extent of the assets that each received upon Gateway's dissolution.[4]

The Unions argue that it would frustrate public policy to allow the terms of the Assumption of Liability to limit the absolute terms of the Certificate of Dissolution. California's public policy, however, as embodied in Cal.Corp.Code § 1905, required only that Gateway and its successors provide for its liabilities as far as its assets permitted. This policy is entirely sensible, as the Unions as creditors were only prejudiced by Gateway's dissolution to the extent that Gateway actually held assets prior to dissolution.

## CONCLUSION

Summary judgment is granted against Gateway for the full amount of the arbitrator's award. Gateway is therefore dismissed as a plaintiff in the declaratory judgment action. Summary judgment is also granted against John Langford, David Dyck, John Hempel, and Larry Moore in their capacity as former Gateway shareholders, but only to the extent that they received assets upon Gateway's dissolution. The plaintiffs motion to dismiss the cross-petition as against David Dyck, John Hempel, and Larry Moore is denied. This denial is without prejudice to make such a motion

---

**4.** Plaintiffs contend that the distribution amounted to $200 per shareholder. The Unions have requested and will be allowed discovery on this question.

again after these three individuals have paid over any and all assets which they received upon Gateway's dissolution. The parties should move forward towards trial on the issues of whether NAI and John Langford are directly bound by the arbitrator's award.

IT IS SO ORDERED.