932 F.2d 971
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
PAINTERS DISTRICT COUNCIL NO. 30 PENSION FUND, Painters
District Council No. 30 Health & Welfare Fund, Northern
Illinois Painters & Decorators Joint Apprenticeship &
Training Fund, et al., Plaintiffs-Appellees,
v.
REECE SERVICES, INC., Defendant-Appellant.
 No. 90-2922.
 United States Court of Appeals, Seventh Circuit.
 Argued May 7, 1991.
Decided May 16, 1991.
 
 Before WOOD, Jr., and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Reece Services, Inc., appeals the district court's grant of summary judgment for the plaintiffs. The district court held that Reece Services, incorporated by David and Mary Reece in February 1986, was the alter ego of Algonquin Decorating Services, Inc., another corporation that had been formed by the Reeces in 1983. As Algonquin's alter ego, Reece Services was liable for obligations incurred by Algonquin to the plaintiffs pursuant to a collective bargaining agreement between Algonquin and Painters District Council No. 30.
 
 
 2
 The district court's memorandum opinion and order summarizes the evidence in the case, correctly explains the relevant law, and correctly applies that law to the undisputed facts. We agree with the district court that the record in this case leads to but one conclusion: Reece Services was Algonquin's alter ego. No reasonable jury could find other than that Reece Services was formed to carry on Algonquin's business while avoiding Algonquin's obligations under the collective bargaining agreement. Since we agree with the district court's reasoning and conclusion, we affirm. A copy is attached as an appendix to this order.
 
 
 3
 AFFIRMED.
 
 APPENDIX
 
 4
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 5
 PAINTERS DISTRICT COUNCIL NO. 30 PENSION FUND, PAINTERS
 
 
 6
 DISTRICT COUNCIL NO. 30 HEALTH & WELFARE FUND, NORTHERN
 
 
 7
 ILLINOIS PAINTERS AND DECORATORS JOINT APPRENTICESHIP AND
 
 
 8
 TRAINING FUND, NORTHEAST ILLINOIS PAINTING AND DRYWALL
 
 
 9
 INSTITUTE and PAINTERS DISTRICT COUNCIL NO. 30, Plaintiffs,
 
 
 10
 v.
 
 
 11
 REECE SERVICES, INC., Defendant.
 
 No. 87 C 2156
 
 12
 Dec. 19, 1988.
 
 MEMORANDUM OPINION AND ORDER
 JAMES F. HOLDERMAN, District Judge:
 
 13
 On March 2, 1987 plaintiffs filed their one-count complaint under section 502 of the Employment Retirement Income Security Act (ERISA) and section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, seeking, inter alia, enforcement of the provisions of a collective bargaining agreement entered into by Algonquin Decorating Service, Inc. ("Algonquin") and plaintiff Painters District Council No. 30 ("Union"). Under the terms of the collective bargaining agreement, Algonquin was required to make monthly contributions to the Painters District Council No. 30 Health and Welfare Fund, the Painters District Council No. 30 Pension Fund, the Northern Illinois Painters and Decorators Joint Apprenticeship and Training Fund and Northeast Illinois Painting and Drywall Institute (collectively referred to as the "Trust Funds" and, together with the Union, "plaintiffs"). Algonquin ceased doing business in June of 1986. The complaint alleges that defendant Reece Services, Inc. ("Reece Services") is merely the alter ego of Algonquin and that plaintiffs are therefor entitled to compliance with the provisions of the collective bargaining agreement from Reece Services.
 
 
 14
 Plaintiffs have moved for summary judgment. Summary judgment is appropriate under Rule 56(c) Fed.R.Civ.P. "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] Evidence that is "merely colorable" or "not significantly probative" is not sufficient to raise a genuine factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511 (1986). "[U]nless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," summary judgment should be granted. Id. For the reasons set forth below, plaintiffs' motion for summary judgment is granted.
 
 BACKGROUND FACTS
 
 15
 Algonquin was incorporated on November 1, 1983 by David Reece as a general decorating and painting business. David Reece was the President of Algonquin: his wife, Mary Reece, was the Secretary and sole shareholder. According to David Reece, Algonquin was engaged primarily in "production housing, track homes" painting. Dep. of David Reece, p. 5, Exhibit Q to plaintiffs' 12(e) statement. In May of 1983 Algonquin entered into a collective bargaining agreement with the Union. Algonquin signed a new agreement in 1984 and again in 1985; the final agreement was effective through April 30, 1987. The collective bargaining agreement obligated Algonquin to make monthly contributions to the Trust Funds for each hour worked by its painter employees as well as its non-union subcontractors. Algonquin was further required to withhold two percent of its painter employees' wages and remit this amount to the Union.
 
 
 16
 Algonquin ceased doing business in June of 1986 and was formally dissolved in August of 1986. On January 5, 1987 Algonquin filed a petition under Chapter 7 of the Bankruptcy Code, case no. 87 B 30001. According to the affidavit of Mary Reece, "Algonquin went bankrupt because it could not perform production work with UNION painters and stay in business." Affidavit of Mary Reece attached to defendant's response to plaintiffs' motion for summary judgment.
 
 
 17
 During the summer of 1986, i.e. before Algonquin filed for Chapter 7 relief but after it ceased doing business, all of the assets and liabilities of Algonquin were transferred to Reece Services pursuant to a Plan of Reorganization under Internal Revenue Code Sec. 368. According to the Plan of Reorganization:
 
 
 18
 Reece Services will continue providing decorating services and use the assets transferred from Algonquin Decorating Services in their line of business. Algonquin Decorating Services is then liquidated.
 
 
 19
 The purpose of this reorganization is to establish a corporation which does not use union employees and is not subject to a collective bargaining agreement.
 
 
 20
 Exhibit O, p. 11 to plaintiffs' 12(e) statement.
 
 
 21
 Reece Services was incorporated in February of 1986. The Articles of Incorporation stated the corporate purpose of Reece Services in identical terms as that stated in Algonquin's Articles of Incorporation. Compare Exhibit M and Exhibit N of plaintiffs' 12(e) statement. David Reece became the President of Reece Services and Mary Reece became the new corporation's Secretary. As she was for Algonquin, Mary Reece was Reece Services' sole shareholder. Both Algonquin and Reece Services were operated out of the Reeces' home. David Reece was the on-the-job supervisor of both companies, did the bidding for both companies, and worked with the employees of both companies. Dep. of David Reece, Exhibit Q to plaintiffs' 12(e) statement. At least eight persons who performed work for Algonquin continued to perform painting work for Reece Services after the reorganization. See Exhibits F and I to plaintiffs' 12(e) statement.
 
 DISCUSSION
 
 22
 The only issue presented in this motion is whether Reece Services is the alter ego of Algonquin, and is thereby bound to fulfill Algonquin's obligations under the terms of the final collective bargaining agreement entered into by the Union and Algonquin. "The alter ego doctrine (i.e., treating two nominally separate business entities as if they were a single, continuous employer) is applied to 'prevent[ ] an Employer from gaining an unearned advantage in his labor activities simply by altering his corporate form.' " N.L.R.B. v. Dane County Dairy, 795 F.2d 1313, 1321 (7th Cir.1986), quoting Alkire v. N.L.R.B., 716 F.2d 1014, 1018 (4th Cir.1983). Factors to be considered by the court in determining alter ego status include common management, identical corporate ownership, business purpose, operations, equipment, customers and supervision. See, e.g., Gateway Structures, Inc. v. Carpenters Union No. 46, 779 F.2d 485, 488 (9th Cir.1985) and N.L.R.B. v. Allcoast Transfer, Inc., 780 F.2d 576, 580 (6th Cir.1986). The Seventh Circuit has advised that "the alter ego doctrine focuses on 'the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets.' " International Union of Operating Engineers, Local 150 v. Centor Contractors, Inc., 831 F.2d 1309, 1312 (7th Cir.1987), quoting Penntech Papers, Inc. v. N.L.R.B., 706 F.2d 18, 24 (1st Cir.1983) cert. denied 464 U.S. 892 (1983). If the application of these factors show that a corporation is the alter ego of another, the nonsignatory employer will be bound to the terms of a collective bargaining agreement entered into by the signatory employer.
 
 
 23
 Under the facts of this case, Reece Services is the alter ego of Algonquin. Both of the companies were formed for the same purpose; Mary Reece was the sole shareholder and corporate Secretary of each; and David Reece was the President of each. Algonquin and Reece Services were both operated out of an office in the Reeces' home; the equipment of Algonquin was transferred to Reece Services in order to continue the painting operations. Reece Services hired at least eight of the painters that had been employed by Algonquin prior to its distribution. And, finally, Algonquin's plan of reorganization is "particularly damning," blatantly stating that Reece Services was being formed so that Algonquin could cease to operate under the collective bargaining agreement it had signed. International Union of Operating Engineers, supra at 1314.
 
 
 24
 The only evidence proferred by Reece Services to support its contention that it is not the alter ego of Algonquin is the affidavit of Mary Reece which states that Algonquin did "production" type painting whereas Reece Services performs solely "custom" work. See Affidavit of Mary Reece attached to defendant's response to plaintiffs' motion for summary judgment. Ms. Reece's affidavit states:
 
 
 25
 It was never the purpose of REECE SERVICES, INC. to carry on the business of Algonquin. REECE SERVICES primarily performs custom work, not production work as had been provided by Algonquin. UNION painters were not to be employed by REECE SERVICES because UNION painters were not sufficiently skilled or sufficiently motivated to perform the custom work which REECE SERVICES performed. Algonquin was totally liquidated and bankrupt. The equipment which REECE acquired from Algonquin resulted from Algonquin's bankruptcy and total liquidation.[2]
 
 
 26
 The court concludes that Ms. Reece's affidavit is simply not sufficient to defeat the plaintiffs' motion. The articles of incorporation for both Algonquin and Reece Services both state the purpose of the corporations in identical terms:
 
 
 27
 To carry on a general decorating, painting, wallpaper, both interior and exterior business, to purchase, lease or otherwise acquire the necessary goods, wares, merchandise, machinery, and supplies for the conduct of the business and to do any and all things necessary to the aforesaid business, and further to acquire, own, improve, lease, operate, maintain, mortgage, sell, exchange, or otherwise deal in real estate.
 
 
 28
 The Plan of Reorganization stated that "Reece Services will continue providing decorating services and use the assets transferred from Algonquin Decorating Services in their line of business" (emphasis added). Ms. Reece testified:
 
 
 29
 Q. And as part of this Plan of Reorganization was Reece Services going to continue to provide decorating services in their line of business?
 
 
 30
 A. Yes.
 
 
 31
 Q. Was Algonquin Decorating Service thereafter to be liquidated?
 
 
 32
 A. Yes.
 
 
 33
 Q. Was the purpose of the reorganization to establish a corporation which did not involve union employees and was not subject to a collective bargain agreement?
 
 
 34
 A. Yes.
 
 
 35
 Finally, many of the same painters employed by Algonquin were employed by Reece Services after dissolution of the former company.
 
 
 36
 It may well be that Reece Services has evolved into a company that primarily does "custom" work. The deposition testimony of David Reece vaguely supports such a conclusion. ("We were doing production housing, track homes and that is about it at that period of time [.e. first half of 1986].") But at the time it was formed, the evidence inescapably demonstrates that Reece Services was formed for the express purpose of carrying on the business of Algonquin without the financial burden of the collective bargaining agreement. As the Seventh Circuit stated, "[f]ederal labor policy cannot tolerate such easy avoidance of collective bargaining obligations." International Union of Operating Engineers, Local 150 v. Centor Contractors, Inc., supra at 1314.
 
 
 37
 Reece Services has raised various legal issues which it argues precludes summary judgment. The court finds each of these arguments meritless.
 
 
 38
 First, Reece Services argues that Algonquin's debt to the plaintiffs was discharged through the Chapter 7 bankruptcy proceeding and the principle of res judicata. Reece Services is mistaken. The Chapter 7 liquidation did not discharge any previous debt Algonquin incurred; in fact, the "primary concern underlying [Sec. 727(a)(1) of the Bankruptcy Code] was to prevent businesses from evading liability by liquidating debtor corporations and resuming business free from debt." N.L.R.B. v. Better Building Supply Corp., 837 F.2d 377, 379 (9th Cir.1988).
 
 
 39
 Next, Reece Services argues that "bona fide discontinuance" is a "material issue which precludes summary judgment." Defendant's Response to Plaintiff's Motion, p. 2. Reece Services, however, has been unable to raise any material fact to support its contention that Algonquin was dissolved for any reason other than to avoid its obligations under the collective bargaining agreement. Without any such factual dispute, summary judgment is appropriate.
 
 
 40
 Finally, Reece Services appears to contend that because the Northeast Illinois Chapter of Painting and Decorating Contractors of America ("Northeast Chapter") never executed the collective bargaining agreements, Algonquin was not obligated under its terms.[3] As explained in plaintiffs' reply brief, however, the Northeast Chapter is the employer association which acts as the bargaining agent of the employer members. When individual employers, such as Algonquin, execute a collective bargaining agreement, they agree to be bound to the terms negotiated between the Union and the Northeast Chapter. The collective bargaining agreements specifically recognize the Northeast Chapter as the bargaining agent of the employer members. Mary or David Reece and a representative of the Union executed all three of the collective bargaining agreements into which Algonquin entered. In sum, the absence of a signature from a representative of the Northeast Chapter does not invalidate the contract entered into by Algonquin and the Union.
 
 CONCLUSION
 
 41
 For the reasons set forth herein, plaintiffs' motion for summary judgment is GRANTED. The parties are ordered to attempt to resolve their dispute regarding the accuracy of the audit reports discussed in n. 1, supra and to discuss settlement of the damages in this case. The parties shall report on the status of the settlement discussions on January 11, 1989 at 10:00 a.m.
 
 
 
 [1]
 As support for their motion for summary judgment and in compliance with Rule 12(e) of the local rules of this court, plaintiffs filed a Rule 12(e) statement accompanied by affidavits, parts of the record and other supporting materials upon which plaintiffs relied to support their statement. Reece Services has moved to strike eleven of the exhibits to plaintiffs' 12(e) statement
 As an initial matter the court notes that plaintiffs have stated, and Reece Services has not refuted, that exhibits A, B, C and G of plaintiffs' appendix of exhibits were attached as exhibits to the deposition of Mary Reece taken on written questions. As such, the exhibits are properly before the court on this summary judgment motion. See First Nat. Bank Co. of Clinton, Illinois v. Insurance Co. of North America, 606 F.2d 760, 766 (7th Cir.1979).
 Reece Services has raised no objection to the authenticity or accuracy of the Pension Trust Agreement, the Health and Welfare Trust Agreement, bankruptcy and corporate filings of Algonquin and a copy of Algonquin's final tax return. Without such an objection, the court believes that all of these materials would survive a hearsay objection at trial and, in the interest of judicial economy, are properly considered in this motion for summary judgment.
 Finally, Reece Services objects to the accuracy and admissibility of two audit reports submitted by plaintiffs as exhibits H and J to their 12(e) statement. The audit reports purport to compare the hours worked by employees of Algonquin and Reece Services with the hours reported by the companies to the Trust Funds. The court believes that the issue presented by this motion for summary judgment can be decided without recourse to the disputed audit reports, which relate more directly to the issue of damages. Therefore, the court will not consider these exhibits in making its determination.
 
 
 [2]
 The court notes that the transfer of assets from Algonquin to Reece Services occurred almost five months before Algonquin filed for Chapter 7 relief
 
 
 [3]
 This issue is raised in Mary Reece's affidavit and Reece Services' 12(f) statement, but not argued in the response brief