**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DANE COUNTY DAIRY, et al., Respondents.**

**No. 85–1440.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 8, 1986.
Decided July 9, 1986.

Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

Fred Gants, Madison, Wis., for respondents.

Before BAUER, WOOD and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The National Labor Relations Board granted summary judgment against the respondents' holding that the respondents failed to demonstrate good cause excusing an untimely answer and finding that several affiliated companies were alter egos of Dane County Dairy. We grant the petition of the Board for enforcement of its order.

### I

On April 11, 1984, the Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees and Helpers Local 695 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union") filed with the Milwaukee Regional Office of the National Labor Relations Board a charge against Dane County Dairy ("DCD" or "the Dairy"). The Union alleged that the Dairy had laid off employees represented by the Union and transferred the work performed by them to Bowman Enterprises, Inc.; MAJJAJ Bowman, Inc.; Bowman Farms, Inc.; Mary Ann Bowman, An Individual; Mary Ann Bowman d/b/a MAJJAJ Frigid Freight; Duane Bowman, Jr., An Individual; Duane Bowman, Jr., d/b/a Bowman Enterprises, Inc.; Duane Bowman, Jr., d/b/a Duane Bowman, Jr. & Associates; Duane Bowman, Jr., d/b/a Duane Bowman, Jr. & Family ("affiliated enterprises")[1] with the intent to discourage membership in the Union and evade its collective bargaining obligations, in violation of Section 7 of the National Labor Relations Act ("Act"), 29 U.S.C. § 157.

Subsequently, the Union filed three amended charges; the first and second charges alleged that the affiliated companies were alter egos of the Dairy and named the affiliated companies as parties. The third charge alleged that the layoffs and the transfer of work were also in retaliation for prior NLRB proceedings instituted against Dane County Dairy. After the charges were filed, a field investigator from the NLRB interviewed various parties and received affidavits from the employees. DCD filed the sworn affidavit of Mary Ann Bowman with the Board disputing the alter ego status of MAJJAJ Frigid Freight and MAJJAJ Bowman, Inc.

On June 13, 1984, the Acting Regional Director of the NLRB Milwaukee Office issued a complaint against the Dairy and the affiliated entities contending that: (1)

---

1. Stop-N-Go of Madison, Inc. was named as a joint employer. Because the Board deleted Stop-N-Go from the caption in the summary judgment proceeding, we do not include it as an "affiliated enterprise."

Dane County Dairy and the affiliated companies constituted a single integrated business enterprise and a single employer within the meaning of the Act; (2) the Dairy laid off union employees without notice to or bargaining with the Union as to the layoffs or their effect; (3) utilized its affiliated companies to perform the work previously done by the laid off employees; (4) refused to give information to the Union necessary to fulfill its role as the exclusive collective bargaining representative for the bargaining unit; and, (5) refused to attend a meeting with the Union, all in violation of Section 8(a)(1), (3) and (5) of the Act (29 U.S.C. § 158(a)(1), (3) and (5)).

The complaint contained a notice of the answer required by 29 C.F.R. 102.20, which provides:

"*Answer to complaint; time for filing; contents; allegations not denied deemed admitted.*—The respondent shall, within 10 days from the service of the complaint, file an answer thereto. The respondent shall specifically admit, deny or explain each of the facts alleged in the complaint, unless the respondent is without knowledge, in which case the respondent shall so state, such statement operating as a denial. All allegations in the complaint, if no answer is filed, or any allegation in the complaint not specifically denied or explained in an answer filed, unless the respondent shall state in the answer that he is without knowledge, shall be deemed to be admitted to be true and shall be so found by the Board, unless good cause to the contrary is shown."

Each of the respondents were served with the complaint via the United States mail service and Donald Hue, then attorney for the respondents, was served via certifed mail. Additionally, Duane Bowman (the owner of Dane County Dairy, Duane Bowman, Jr. & Family, and Duane Bowman, Jr. & Associates, who was also the mananger or agent of MAJJAJ Bowman, Inc., MAJJAJ Frigid Freight, Bowman Enterprises, Inc. and Bowman Farms, Inc.) was personally served by an employee of the Milwaukee office of the NLRB.

The respondents failed to file an answer within the 10 day deadline; consequently, a Field Examiner for the NLRB sent both Duane Bowman and Attorney Hue letters notifying them that if an answer was not filed by July 12, 1984 the regional office would proceed as if the allegations in the complaint were admitted as true:

"On June 13, 1984, the Acting Regional Director issued a Complaint and Notice of Hearing in the above matter. This document points out the requirement that the allegations in the Complaint are to be answered within 10 days and, if they are not, then the allegations in the Complaint shall be deemed to be admitted as true. To date no answer has been received. Please be advised that if no answer is filed by July 12, 1984, the Region will proceed in this matter on the basis that the allegation[s] in the Complaint are being admitted as true."

In addition, on or about July 17, 1984, an attorney with the General Counsel's office of the NLRB telephoned Donald Hue and repeated the requirement that an answer must be filed. Despite the notice in the complaint, the letter, and the phone call, respondents still failed to file an answer.

On July 18, 1984, the NLRB filed a petition for a temporary injunction pursuant to Section 10(j) of the Act, 29 U.S.C. § 160(j), in the United States District Court for the Western District of Wisconsin naming DCD and the affiliated companies as respondents. The NLRB submitted the depositions of Duane and Mary Ann Bowman to the court which, after a review of the same and a hearing, made findings of fact that:

"8. On or about March 27, 1984 (or shortly thereafter), Dane County Dairy transferred functions it had previously performed to Majjaj Bowman, Inc. and Majjaj Frigid Freight.

9. Mary Ann Bowman, Duane Bowman, and Duane Bowman, Jr., d/b/a Duane Bowman, Jr. & Family, are other non-distinct entities engaged in businesses identical or complementary to the businesses engaged in by Dane County

Dairy, Majjaj Bowman, Inc., and Majjaj Bowman Frigid Freight."

As a conclusion of law, the district court held:

"2. Petitioner has reasonable cause to believe that: (1) Dane County Dairy, Majjaj Bowman, Inc.; Mary Ann Bowman, an individual; Mary Ann Bowman, d/b/a Majjaj Frigid Freight; Duane Bowman, Jr., an individual; Duane Bowman, Jr., d/b/a Duane Bowman, Jr. & Family were and are an employer within the meaning of Section 2(2) of the Act;

\* \* \* \* \* \*

(d) The respondents have engaged in unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these unfair labor practices will impair the policies of the Act as set forth in Section 1(b) thereof."

Although Bowman Enterprises, Inc.; Bowman Farms, Inc.; Duane Bowman d/b/a Bowman Enterprises; and Duane Bowman d/b/a Duane Bowman, Jr. & Associates were listed as respondents by the court, the court failed to make any findings of fact or conclusions of law as to these entities. The court granted a temporary injunction ordering "respondents, their officers, representatives, agents, servants, employees, attorney and all members and persons acting in concert or participation with them," to restrain from "the commission, continuation or repetition" of the alleged unfair labor practices (terminating the members of the bargaining unit for the purpose of discouraging employees from engaging in collective bargaining; transferring work previously performed by the bargaining unit to employees of Dane County Dairy's affiliated enterprises; refusing to provide the Union with information necessary to fulfill its role as the sole designated collective-bargaining representative for the bargaining unit; failure to bargain over the decision to lay off all bargaining until employees or the effect of the decision; and, failure to bargain over the transfer of the bargaining unit's work to Dane County Dairy's affiliated enterprises.)

On October 23, 1984 the General Counsel of the NLRB filed a motion for summary judgment with the National Labor Relations Board. The General Counsel based his contention that there was no material issue of fact on two grounds: (1) because the respondents failed to file an answer, the allegations in the Complaint must be deemed to be true; (2) the evidence and depositions submitted with the motion demonstrate that there is no material issue of fact. The General Counsel urged the Board to find that the Dane County Dairy and its affiliated companies were in fact alter egos and a single employer under the Act and that the respondents violated the Act "by terminating its delivery routes and driver-employees and re-establishing those routes with an alter ego entity;" "by failing and refusing to furnish the Union with necessary and relevant information;" and "by failing and refusing to meet and bargain with the Union."

The respondents filed a brief in response to the summary judgment motion along with an undated answer to the complaint on December 11, 1984. The respondents argued, *inter alia*, that they should be allowed to file their untimely answer "on the ground of excusable neglect;" that a grant of summary judgment would be improper; and, that "a Hearing [should] be scheduled to sort out the complex issues presented before the Board in this proceeding." As to their failure to file an answer within the 10-day deadline or by July 12, 1984, the extension the regional office unilaterally granted, the respondents argued:

"[T]he failure to file an Answer to the Amended Complaints was due to excusable neglect and that General Counsel was always aware that respondents denied the Unfair Labor Practice Charge and that the NLRB is no way prejudiced by a failure to file an Answer to the Complaint; that the Respondent has complied with the Injunctive Relief requested by the General Counsel. The respondents were surprised by the late cancellation of the scheduled Board Hearing on Septem-

ber 10, 1984; that the respondents be permitted to interpose their Answer to General Counsel's Complaint at this time."

The respondents also disputed the General Counsel's contention that the affiliated companies were in fact alter egos of DCD and that Dane County Dairy and the affiliated entities were a single employer under the Act. However, the Dairy and the alter ego companies failed to offer affidavits, depositions or documentary evidence on this issue to rebut the deposition evidence presented by the General Counsel; instead the respondents merely contended that "a Board Hearing would be appropriate to sort out the entities and their relationship to DCD, the real party in interest. Evidence adduced at the Board Hearing would reveal that [the] General Counsel has simply included all entities having the name 'Bowman' as a Respondent in this case and every time a 'Bowman' surfaces the occasion calls for an amended complaint."

The Board rejected respondent's good faith argument:

"The Respondent does not deny that it was properly served with the complaint. Nor does it deny the further assertions in the Motion for Summary Judgment that it was informed of the necessity of answering on two subsequent occasions. Moreover, we note that the Respondent neither filed an answer nor requested an extension of time in which to do so until approximately 6 months after the complaint issued and 6 weeks after the motion was filed. In these circumstances we find the Respondent has not shown good cause why it failed to file a timely answer."

However, the Board in its grant of the Motion for Summary Judgment did not rely solely on the allegations in the complaint, deemed to be true by the respondent's failure to answer, but also relied on the entire record before them:

"In asserting jurisdiction over the Respondent here in addition to relying on the allegations of the complaint, we rely on certain admissions of Respondent Duane Bowman in the testimony which he gave in a proceeding closely related to the present case in the United States District Court for the Western District of Wisconsin, transcripts of which were attached as exhibits to the Motion for Summary Judgment."

As to the question of the affiliated companies, the Board "omitted Stop-N-Go of Madison, Inc. from the caption. We note that our Order binds, among others, agents of the respondents." In asserting jurisdiction over the affiliated companies, the Board found:

"that, as alleged in the complaint, Bowman is sole stockholder and registered agent of Dane County Dairy; agent for Bowman Enterprises, Inc.; agent for each of his sole proprietorships named in the caption of this decision and supervisor and consultant for MAJJAJ Bowman, Inc. and the sole proprietorships of Mary Ann Bowman named in the caption of this decision."

The Board found "in accordance with the allegations of the complaint" that Dane County Dairy and the affiliated enterprises "are alter egos, and that they constitute a single integrated enterprise and constitute a single employer within the meaning of Section 2(2) of the Act." The Board concluded that the respondents laid off their employees for unlawful reasons, in violation of Section 8(a)(3) and (4) of the Act, and without bargaining with the Union in violation of Section 8(a)(5) of the Act. The Board ordered the Respondents to cease and desist from the unfair labor practices and from infringing "in any other manner" upon their employee's rights, as guaranteed by Section 7 of the Act. Moreover, the Board ordered the respondents to reinstate the laid off employees with backpay; bargain with the Union before implementing any future layoff; and post a notice drafted by the Board.

After the Board issued its Order, respondents, represented by new counsel, filed a motion for reconsideration, rehearing and reopening of the record with the Board. The respondents alleged that they had not

filed a timely answer because of "the confusion that arose in the fact of numerous amended charges and the extensive correspondence which was mailed to the various entities alleged to be alter egos." Additionally, the respondents contended that, "[t]he method of service of process, i.e., on Mr. Hue and Duane Bowman, with copies sent by common mail to the other entities, assumed that each of the entities was an alter ego. Some of the various entities were never properly served and never had a full opportunity to contest the allegations of alter ego status." Further, the respondents contended that the finding that the affiliated companies were alter egos of Dane County Dairy was not supported by the record and was "extraordinarily burdensome and should not have been made without evidentiary hearings." Moreover, the respondents alleged that they were:

"prepared to submit evidence to the Board establishing that some and possibly all of these entities, especially MAJJAJ Bowman, Inc., Bowman Enterprises, Inc., and Bowman Farms, Inc., are distinct from Dane County Dairy in their business purposes, operations, equipment, customers, and supervision as well as their management and ownership. This evidence has not been previously submitted by any party. The respondents, however, did allude to this evidence in the Response to the Motion for Summary Judgment.... If addressed and credited, this evidence would require a different result with respect to the finding of alter ego status."

The Board denied the motion "as lacking in merit" and applied to this court for a judgment enforcing its Order. The respondents argue that their reasons for filing a late answer constitute good cause. In the alternative, the respondents contend that if we decide that they failed to demonstrate good cause for failure to file a timely answer, we should deny enforcement as to Bowman Enterprises, Inc., Bowman Farms, Inc., Duane Bowman, Jr. & Associates, and Duane Bowman, Jr. & Family because, in their view, these entities were not alter egos of DCD.

## II

### A. *Failure to File a Timely Answer*

■ On appeal, respondents limit their good cause arguments to two grounds:

"1. Respondents' former counsel, an attorney acquaintance of Duane Bowman, Jr., was confused by the Board's procedures and did not appreciate the legal significance of filing an Answer in light of his concurrent defense of respondents in the temporary injunction proceedings in the federal court.

2. The Board and its agents had actual notice of respondents' position by previous filings and by defense of the temporary injunction proceedings, and the Board was not prejudiced by the delay in filing the Answer. Respondents fully expected to contest the allegations in the Complaint at the scheduled hearing, which was cancelled on short notice of the Board's own motion, apparently so that the General Counsel could file for default summary judgment."

According to the respondents, these two grounds justify a reversal of the Board's determination that good cause was not shown and dictates a remand of this case to the Board for a determination on the merits.

As was noted above, the rules and regulations of the NLRB require a respondent to file an answer to a complaint within ten days of service of the complaint. 29 C.F.R. § 102.20. The rules specifically provide: "All allegations, in the complaint, if no answer is filed ... shall be deemed to be admitted as true and shall be so found by the Board unless good cause to the contrary is shown." *Id.* In enacting the National Labor Relations Act, Congress authorized the Board "to make such rules and regulations as may be necessary to carry out the provisions of the Act," 29 U.S.C. § 156, and "the Board is empowered to construe its own rules free of judicial review unless its construction is so arbitrary as to defeat justice." *NLRB v. Paper Art Co., Inc.*, 430 F.2d 82, 84 (7th Cir.1970).

Therefore, the Board's determination of what constitutes "good cause" excusing a failure to file a timely answer must be upheld by the Court of Appeals unless its construction of the good cause standard "is so arbitrary as to defeat justice." *Id.*

█ The Board urges us to reject the argument that attorney Hue's alleged inexperience constituted good cause, noting that this inexperience of counsel argument was raised in neither the brief in opposition to the summary judgment motion nor in the motion for reconsideration, which was filed by new counsel. Pointing to the additional fact that the respondents offered no explanation for failing to raise the argument concerning inexperience of counsel before the Board in their brief to this court, the NLRB concludes that review of this argument is barred by § 10(e) of the Act (29 U.S.C. § 160(e)) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.") However, we need not reach the Board's waiver argument because an examination of the facts reveals that the inexperience of counsel argument is without merit. Initially, the Board attacks the inexperience of counsel argument by noting that on two occasions Duane Bowman has filed an answer, participated in a hearing and filed timely exceptions in proceedings before the National Labor Relations Board.[2] Indeed, Bowman's Answer in Case No. 30–CA–7966 was attached as an exhibit to the General Counsel's motion for summary judgment. Thus, the record demonstrates that Duane Bowman was familiar with NLRB proceedings, was aware of the requirement to file an answer, and had no need to rely on the expertise of attorney Hue. Secondly, the NLRB points out that the complaint contained a notice informing the respondents that they had ten days from the date of service to file an answer; that both Bow-

man and Hue received letters notifying them that if an answer was not filed by July 12, 1984, the regional office would proceed as if the allegations in the complaint were admitted as true; and, that on or about July 17, 1984, an attorney from the General Counsel for the NLRB telephoned Hue and repeated the requirement that an answer must be filed. Based upon the actual notice of the requirement given to Bowman and Hue (the notice in the complaint, the letters, and the phone call) and upon Bowman's familiarity with NLRB proceedings, we hold that the inexperience of counsel argument is without merit.

█ We turn to the respondents' second argument that "the Board and its agents had actual notice of respondents' position by previous filings and by defense of the temporary injunction proceedings, and the Board was not prejudiced by the delay in filing the answer." In effect, the respondents argue that their opposition to the temporary injunction order served as a substitute for a formal, signed, written answer, filed with the Board, specifically admitting or denying each allegation of the complaint. The Board's rule specifies that: "An original and four copies of the answer *shall* be filed with the regional director issuing the complaint." 29 C.F.R. § 102.21 (emphasis added). Moreover, the "respondent *shall* serve a copy thereof on each of the parties." *Id.* (emphasis added). The answer *shall* be signed by "at least one attorney of record in his individual name," or, if the party is not represented by counsel, the party *shall* sign the answer. *Id.* "The signature of an attorney constitutes a certificate by him that he has read the answer; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." *Id.* Thus, this review of the Board's rule clearly reveals that the answer must be in writing so that notice of the answer may be given to the parties and, the answer must be signed to

**2.** Duane Bowman represented Dane County Dairy in *Dane County Dairy,* 269 NLRB 218 (1984) and *Dane County Dairy,* 273 NLRB No. 209 (1985). In both cases, Bowman filed an answer, participated in a hearing, and filed timely exceptions.

prevent the filing of sham or false answers. The exception the respondents urge us to adopt (that filings in opposition to a motion for a temporary injunction are a substitute for a written, formal answer before the Board) would directly contradict the rule's command that a written answer *shall* be filed and would undermine the rule's functions of providing notice and preventing sham answers; we reject the proposed exception. We hold that the respondent's filings and opposition to the petition for a temporary injunction were not a substitute for a written, formal answer before the Board.

### B. *Alter Ego Companies*

■ Respondents argue that in the event that we refuse to remand this case to the NLRB on the ground that they failed to show good cause excusing their untimely answer, that we should deny enforcement as to Bowman Enterprises, Inc.; Bowman Farms, Inc.; Duane Bowman, Jr. & Associates; and Duane Bowman, Jr. & Family because, in their view, these entities were not alter egos of DCD.

The alter ego doctrine (*i.e.*, treating two nominally separate business entities as if they were a single, continuous employer) is applied to "prevent[ ] an Employer from gaining an unearned advantage in his labor activities simply by altering his corporate form...." *Alkire v. NLRB*, 716 F.2d 1014, 1018 (4th Cir.1983).

"The National Labor Relations Board has [found] an alter ego relationship where the new employer is a 'disguised continuance of the old employer' ...; or was in active concert or participation in a scheme or plan or evasion ...; or siphoned off assets for the purpose of rendering insolvent and frustrating a monetary obligation such as backpay ...; or so integrated or intermingled its assets and affairs that 'no distinct corporate lines are maintained.' The Board has also found an alter ego relationship based on substantially identical business purposes, equipment, type of customers, actual joint day-to-day operations, joint labor relations, a favorable lease agreement, and the transient nature of the relationships between the companies. In some instances the criteria have been equated with the 'basic indicia for finding a single employer, i.e., interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control' although 'more must be shown to establish that one organization is the alter ego of another.' We have also found an alter ego relationship to exist 'even though no evidence of actual common ownership was present.' "

*NLRB v. Mineworkers District 23 (Kentucky Lake Dock Co.)*, 271 NLRB 461 (1984) (citations omitted). An alter ego company may be held derivatively liable for the back-pay obligation of the company committing the unfair labor practice. *NLRB v. Southeastern Envelope Co., and Southeastern Expandvelope, Inc.*, 246 NLRB 423 (1979). "Similarly, personal liability has been imposed where the owner and chief operating officer of one employer closes it and commences doing business in the name of a new entity to avoid the effects of the Act or of labor contracts." *NLRB v. Commercial Carthee Corp.*, 268 NLRB 1036, 1041 (1984).

■ Summary judgment proceedings before the NLRB are equivalent to summary judgment under Fed.R.Civ.P. 56. *See NLRB v. Western Electric Co.*, 198 NLRB 623, 623–24 (1972). The NLRB may grant summary judgment in an unfair labor practice proceeding if no material issue of fact exists. *NLRB v. W.S. Hatch Co.*, 474 F.2d 558 (9th Cir.1973). The party seeking to avoid the summary judgment may not rely on a mere denial of the allegations contained in the complaint but must present specific facts that demonstrate that there are material factual issues requiring a hearing. *NLRB v. The Samurai, Inc.*, 229 NLRB 404, *enforcement den. on other grnds.*, 609 F.2d 864 (6th Cir.1979); *NLRB v. Western Electric, Co.*, 198 NLRB 623 (1972). *Cf. FDIC v. Meyer, Meyer & Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986) ("If a moving party makes out a prima facie case

that would entitle them to a directed verdict if uncontroverted at trial, summary judgment will be granted unless the party opposing the motion offers competent evidence showing that there is a genuine issue as to material fact.") Our review of the NLRB decisions is deferential. *NLRB v. Bliss and Laughlin Steel Co., Inc.*, 754 F.2d 229, 234 (7th Cir.1985). The finding that the affiliated companies are alter egos of DCD must be upheld if it is reasonable and supported by substantial evidence on the record as a whole. *Id.* "We may not, as a reviewing court, displace the Board's choice between two fairly conflicting views, even though we would justifiably have made a different choice had the matter been before us *de novo.*" *Id.* Because the Board deemed the allegations in the complaint to be true, an action that we have affirmed, and also based its summary judgment decision of the evidence submitted with the summary judgment motion, the record we must review includes both the allegations in the complaint and the evidence submitted with the summary judgment motion.

▆▆▆▆ Both the complaint and the summary judgment motion alleged that the affiliated companies and DCD "are affiliated business enterprises and are a single integrated business [and] are alter egos of one another." Noting that: "All the entities that can be described as respondents have actually described themselves on DCD stationery as 'an Activity of Duane Bowman, Jr. & Family,'" the General Counsel presented evidence to establish the elements of: (1) substantially identical ownership and/or control; (2) substantially identical management including control of labor relations; (3) identical and unchanged business operations including purpose, facilities, equipment, customers and supervision; and (4) unlawful motivation. To establish common ownership or control, the General Counsel presented deposition testimony by Duane and Mary Ann Bowman, his wife, demonstrating that all of the affiliated businesses are owned by Bowman family members. Familial control constitutes common ownership and control. *Advance*

*Electric, Inc.*, 268 NLRB No. 151 slip op. at 9 (1984). Moreover, Duane Bowman testified in his deposition that he controlled all of the affiliated enterprises. Common control of nominally distinct entities establishes alter ego status. *American Pacific Concrete Pipe Co.*, 262 NLRB 1223 (1982). Furthermore, Duane Bowman's deposition testimony confirmed that he managed all of the affiliated companies and controlled their labor relations. As to the third element (identical and unchanged purpose, facilities, equipment, customers and supervision) the General Counsel directed the Board to statements in Duane Bowman's deposition supporting a finding that:

> "Respondents, without interruption, have engaged in an unchanged integrated enterprise with an identical business purpose—the wholesale purchase, storage and distribution of dairy products under the DCD name. Respondents operate out of the same facility; they share and exchange equipment and employees. They also have a common administrative staff. No change in operations occurred when DCD ceased distributing products. Essentially, the same customers were serviced with the same equipment, only without union drivers."

Finally, to establish the last element, improper motivation, the general counsel provided the Board with documentary and deposition evidence demonstrating that DCD and Duane Bowman, individually, were openly hostile to the Union and the Board. Moreover, Dane County Dairy was involved in two unfair labor practice proceedings and Bowman testified that he considered the Union's insistence on compliance with a prior Board decision, finding that DCD violated Section 8(a)(5) and (1) of the Act, and the Board's efforts to secure compliance with the Act to be harassment. Further, Bowman admitted that he attempted to rid himself of the Union portion of his operations to terminate this "harassment":

> "Q. Now, with respect to your decision to cease routes service and terminate the employees, would it also be true that your motive was to end

the harassment of the Teamsters and the National Labor Relations Board? Is that true?

A. Yes, it is. I felt I was being harassed. You are right."

In their response to the summary judgment motion, the respondents stated:

"Testimony adduced at a Board Hearing which showed that DCD was until July 1983 in the business of distribution of dairy related products; that from July 1983 to the present time, DCD remained local contract hauler; that the Respondent Majjaj Bowman Frigid Freight (MBFF) is a sole proprietorship of Mary Ann Bowman, wife of Duane Bowman; MBFF is separate and distinct from DCD. Majjaj Bowman, Inc. (MBI) is separate and distinct from DCD. MBFF is a licensed contract hauler from 1981–82 to the present; Majjaj Bowman, Inc. (MBI) is a Wisconsin corporation. Mary Ann Bowman and her minor children are the sole stockholders; MBI operates a frigid warehouse servicing DCD and others and that MBI are separate and distinct from DCD; Bowman Enterprises, Inc. (BEI) is a holding company of which Bowman Farms, Inc. (BFI) is a totally owned subsidiary. Neither BEI nor BFI are engaged in the distribution, warehousing or in any way connected with DCD, MBFF, or MBI."

However, the respondents failed to offer affidavits, depositions or documentary evidence to establish these allegations. Similarly, the respondents failed to present evidence supporting their denial of alter ego status in their motion for reconsideration:

"The respondents are prepared to submit evidence to the Board establishing that some and possibly all of these entities, especially MAJJAJ Bowman, Inc., Bowman Enterprises, Inc., and Bowman Farms, Inc., are distinct from Dane County Dairy in their business purposes, operations, equipment, customers, and supervision as well as their management and ownership. This evidence has not been previously submitted by any party. The Respondents, however, did allude to

this evidence in their Response to the Motion for Summary Judgment...." If addressed and credited, this evidence would require a different result with respect to the finding of alter ego status. The record should be reopened and a hearing should be held on the issue of whether the entities are alter egos."

■ A party seeking to avoid summary judgment in a proceeding before the NLRB may not rely on a mere denial of the allegations contained in the complaint but must present specific facts that demonstrate that there are in fact material factual issues requiring a hearing. *NLRB v. The Samurai, Inc.*, 229 NLRB 404 (1977). Because the respondents failed to present evidence rebutting the deposition and documentary evidence presented by the General Counsel, the Board was justified in concluding that the evidence supported a finding of alter ego status. Moreover, as we have affirmed, the allegations of alter ego status in the complaint were deemed to be admitted as true by the respondents' failure to file a timely answer. Based upon the allegations in the complaint, the evidence submitted with the summary judgment motion, and the respondents' failure to present rebutting evidence either with their motion in opposition to the summary judgment motion or with their motion to reconsider, we hold that the Board's determination that all of the affiliated companies were alter egos of DCD is supported by substantial evidence on the record as a whole.

The order of the NLRB is ENFORCED.