931 F.2d 1093
 137 L.R.R.M. (BNA) 2561, 118 Lab.Cas. P 10,697
 FATHER & SONS LUMBER AND BUILDING SUPPLIES, INC.; Father &
Sons Lumber and Hardware Center; Michael T.
Wudyka; and Edwin T. Wudyka,
Petitioners-Cross-Respondents,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.
 Nos. 90-5036, 90-5286.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 14, 1991.
Decided April 1, 1991.
 
 James R. Andary (argued), Andary, Brennan & Andary, Detroit, Mich., Barry A. Steinway, Thav, Gross & Steinway, Birmingham, Mich., for petitioners-cross-respondents.
 Aileen A. Armstrong, Deputy Associate Gen. Counsel, John Burgoyne, Karen Cordry (argued), John C. Truesdale, Executive Secretary, Joseph E. Moore, William Wachter, N.L.R.B., Office of the General Counsel, Washington, D.C., Bernard Gottfried, Regional Director, N.L.R.B. Region 7, Detroit, Mich., for respondent-cross-petitioner.
 Before RYAN and NORRIS, Circuit Judges, and PECK, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Employers petition for review of two supplemental NLRB orders entered by default due to the employers' repeated failures to file timely answers. The first supplemental order specified the amount of a backpay award, and the second supplemental order made two individual employers personally liable for the backpay award. The NLRB cross-applies for enforcement of the two supplemental orders. The issues are whether the Board's imposition of the default orders violated the employers' rights to fairness and due process, and whether we should allow the employers to present the merits of their case to the NLRB because the employers have discovered new evidence.
 
 
 2
 We conclude that the Board's actions did not violate due process or tenets of fairness and that any "new" evidence is irrelevant to the propriety of the default judgments.
 
 I.
 
 3
 In 1986, the General Counsel of the NLRB issued a complaint against Father and Sons Lumber and Building Supplies, Inc. (BSI). The complaint alleged that BSI committed various acts of unlawful discrimination against employees because the employees had cooperated with government investigators. BSI responded by stating that it was going out of business, but otherwise BSI filed no answer.
 
 
 4
 Accordingly, the General Counsel filed a motion for summary judgment, and the Board filed a Notice to Show Cause why the Board should not grant the General Counsel's motion. When BSI failed to respond, the Board granted the motion and ordered BSI to pay backpay to its former employees. We enforced the Board's order.
 
 
 5
 Next, the General Counsel specified the amount of backpay that BSI allegedly owed and informed BSI that it must respond by filing an answer within 21 days, as provided in 29 C.F.R. Sec. 102.56. After the 21-day period expired without a response, the General Counsel wrote to BSI to extend the period for filing an answer. Receiving no response by the extended deadline, the General Counsel mailed BSI a second letter indicating that if BSI did not file a response within a week, the General Counsel would file a motion for default summary judgment. BSI still failed to respond, so the General Counsel filed the threatened motion. By that point, BSI had retained new counsel, who noticed his appearance on December 20, 1988. On December 29, 1988, the Board issued a Notice to Show Cause why it should not grant the General Counsel's pending motion. On March 13, 1989, the Board, receiving no response to the Notice to Show Cause, granted the General Counsel's motion for default summary judgment.
 
 A.
 
 6
 Not surprisingly, the defunct BSI failed to pay the backpay award. Therefore, the Regional Director filed an amendment to the backpay specification and alleged that as a result of their affiliations with BSI, Michael Wudyka and Edwin Wudyka, as well as Father and Sons Lumber and Hardware Center, were jointly and severally liable with BSI for payment of the backpay award. This amendment, forwarded by certified mail to all the employers and their new attorney, stated that pursuant to Board rules, the employers had 21 days within which to respond. After that period expired without a response, the General Counsel notified the employers by letter that unless they responded within the following two weeks, the General Counsel would file a motion for default judgment.
 
 
 7
 The letter noted, "Any answer to the [amended] Backpay Spec. filed now would be untimely and should be accompanied by a statement indicating the reason for its late submission." Within the two-week period, new counsel, citing his "pressing trial schedule," requested an additional two-week extension of the time for filing. The Regional Director decided that new counsel had shown "good cause," and granted the employers a time extension which was one day longer than new counsel had requested. However, defendants filed no answer by the end of the extended period, and this inaction prompted the General Counsel to file a motion for default judgment.
 
 
 8
 Four days after the extended deadline, defendant's counsel mailed a terse answer received approximately seven days after the deadline. The answer offered no reasons explaining why the employers' counsel waited until four days after the extended deadline to respond. The Board issued a Notice to Show Cause why it should not grant the motion for default judgment. The Board apparently then received a "one page letter" from counsel indicating that he had filed responses.
 
 
 9
 At any rate, counsel did submit a timely formal answer to the notice to show cause. This formal answer stated in very general terms that the answer to the amended specification had been timely filed but possibly due to clerical reasons, was not received until October 20, 1989. However, that statement avails not, because counsel dated and apparently mailed the answer to the amended specification on October 20, 1989. The employers' answer to the notice to show cause also stated that "justice requires that there be a fair and equitable hearing ... not a determination made on the basis of technical determinations of default ... this matter should be heard on its merits not on the supposition of counsel representing the National Labor Relations Board."
 
 
 10
 A few days later, counsel wrote the Regional Director. Counsel's letter stated, "I take full responsibility for the matter not being filed in a timely fashion ... I was involved in litigation at the time and unfortunately there was a breakdown of staff communication and staff responsibility." Counsel also referred to the interests of justice and stated that he would comply with all future deadlines by taking "personal charge of the relationship with the client." Simultaneously, counsel mailed a letter to the Board's Deputy Executive Secretary. New counsel echoed the statements made in the letter to the Regional Director, argued some of the case's merits, and indicated that M. Wudyka "was advised by an attorney that to defend this matter would only cause further costs and expenses and that the Board would probably dismiss it when they knew the Corporation had gone broke."
 
 
 11
 Unimpressed with new counsel's belated responses, the Board granted the motion for summary judgment, with the result that all employers became jointly and severally liable for the backpay award. The Board explained, "The [employers] do not provide any specific details concerning the breakdown of staff communication and responsibility, or state any circumstances that would warrant finding good cause for the [employers'] late filing."
 
 B.
 
 12
 The employers appeal from both supplemental rulings. Since both corporate entities appear to be defunct, the individual employers are the actual parties to this appeal. While they formally appeal from both supplemental orders, employers' arguments bear exclusively upon the second supplemental order.
 
 II.
 
 13
 We apply the "abuse of discretion" standard of review to claims that the Board erred in finding no "good cause" for accepting an untimely answer to a Board-issued specification. Cf. Livingston Powdered Metal, Inc. v. NLRB, 669 F.2d 133, 137 (3d Cir.1982); NLRB v. Zeno Table Co., Inc., 610 F.2d 567, 568-69 (9th Cir.1979). As the Seventh Circuit has stated, "The Board's determination of what constitutes 'good cause' excusing a failure to file a timely answer must be upheld by the Court of Appeals unless its construction of the good cause standard is so arbitrary as to defeat justice." NLRB v. Dane County Dairy, 795 F.2d 1313, 1320 (7th Cir.1986) (citation omitted).
 
 A.
 
 14
 The Board has the "authority ... to make, amend, and rescind, in the manner prescribed by the Administrative Procedure Act, such rules and regulations as may be necessary ...." 29 U.S.C. Sec. 156. Such rules and regulations are "liberally construed to effectuate the purposes and provisions of the [relevant statutes]." 29 C.F.R. Sec. 102.121. The Board and the employers agree that the NLRB may construe its own rules as it wishes, subject to judicial review only when the NLRB's construction is "so arbitrary as to defeat justice." See Dane County Dairy, 795 F.2d at 1319-21.
 
 
 15
 If a dispute arises concerning a Board order for backpay, the Board may issue a compliance specification containing the amount of backpay due and a notice of hearing. 29 C.F.R. Secs. 102.54, 102.55. Under Board rules the respondents named in the compliance specification have 21 days from the service of the specification to file an answer. 29 C.F.R. Sec. 102.56(a). The date the Board mails or personally delivers the complaint is the date of service. 29 C.F.R. Sec. 102.112. The due date is the date on which the Board must receive the answer, with the proviso that the Board accepts answers postmarked on or before the day before the due date without regard to when the Board receives such answers. 29 C.F.R. Sec. 102.111(b).
 
 
 16
 The Board applies an implicit policy of accepting answers to specifications after the due date if "good cause" exists. E.g., Odaly's Management Corp., 292 N.L.R.B. 140 (Feb. 23, 1989); U.S. Telefactors Corp., 293 N.L.R.B. 59 (Mar. 31, 1989). This policy analogizes well to the explicit statement in 29 C.F.R. Sec. 102.20 that failure to file an answer to a labor-relations complaint within a fourteen-day period after service of the complaint may be excused for good cause. "The purpose of the 'good cause' standard ... is to ensure that the Board makes decisions on the merits despite technical and inadvertent noncompliance with procedural rules." National Book Consolidators v. NLRB, 672 F.2d 323, 326 (3d Cir.1982); NLRB v. Zeno Table Co., 610 F.2d 567, 569 (9th Cir.1979).
 
 B.
 
 17
 The employers vaguely contend that the Board violated their due process rights or some principle of fairness. Contrary to employers' assertions, due process generally does not entitle parties to an evidentiary hearing where the NLRB has properly determined that a default summary judgment is appropriate due to a party's failure to file a timely response. See NLRB v. Aaron Convalescent Home, 479 F.2d 736, 738-39 (6th Cir.1973). Moreover, heavy attorney workloads or an attorney's illness do not constitute "good cause." See, e.g., U.S. Telefactors Corp., 293 N.L.R.B. 59 (Mar. 31, 1989); see also Odaly's Management Corp., 292 N.L.R.B. 140 (Feb. 23, 1989).
 
 
 18
 Employers also argue that the Board construed its "good cause" standard arbitrarily so as to defeat justice due to the Board's "failure to treat [the employers'] case in the same manner as it has consistently treated others in similar circumstances (i.e., follow-up calls and letters to counsel when the NLRB notes that a deadline had been missed, and allowing the employer an opportunity to file a late answer)...." As explained above, however, employers were given opportunities to file late answers: they simply refused, repeatedly, to take advantage of such opportunities.
 
 
 19
 We conclude that the Board acted properly, without violating due process or any relevant principles of fairness.
 
 C.
 
 20
 The employers raise an ineffective assistance of counsel claim. Contrary to employers' assumptions, the Sixth Amendment right to effective assistance of counsel, by the clear language of the amendment, does not apply to a civil matter such as this labor relations proceeding. The Fifth Amendment right to effective assistance of counsel does not apply, because this case involves no deportation proceeding or comparable government-initiated action to deprive an individual of an important liberty or property interest. Stated differently, employers' choice of ineffective counsel to represent their interests in a civil labor relations proceeding does not constitute a governmental violation of the employers' Fifth Amendment right to due process. Finally, the Administrative Procedure Act, 5 U.S.C. Sec. 551, et seq., does not confer a statutory right to effective assistance of counsel in this context.
 
 
 21
 We conclude that the employers' assertions that the Board violated a right to effective assistance of counsel are totally groundless.
 
 D.
 
 22
 Employers maintain that new evidence in the form of two letters, mailed in November and December 1986, arose just in time for the employers to attach the new evidence to their "pre-Argument Statement with Addendum" submitted to us on January 22, 1990. This "new" evidence allegedly shows that employers justifiably assumed that the Board would not pursue them personally for the defunct corporations' liability.
 
 
 23
 Aside from the dubious bearing such evidence might have on the merits of the employers' case, the evidence is irrelevant now. Such evidence cannot explain or excuse employers' repeated failures to file timely responses, and this failure alone precipitated the default judgment against the employers. The employers' own inaction denied the Board the opportunity to hold an evidentiary hearing and reach the merits. The employers may not argue the merits before us now.
 
 III.
 
 24
 For the foregoing reasons, the employers' petition for review is DENIED and the Board's application for enforcement is GRANTED.