NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2718
_____

ALTOR, INC., and/or
AVCON, INC., and/or
VASILIOS SAITES, individually,
and NICHOLAS SAITES, individually,

Petitioners,

v.

SECRETARY OF LABOR,

Respondent

_____

No. 11-4077
_____

SECRETARY OF LABOR,

Petitioner

v.

ALTOR, INC., and/or
AVCON, INC., and/or
VASILIOS SAITES, individually,
and NICHOLAS SAITES, individually,

Respondents

_____

Appeal from the Occupational Safety and Health Review Commission

1

Before: Thomasina V. Rogers, Chairman, and
Horace A. Thompson III & Cynthia L. Atwood, Commissioners
_____

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2012

Before:  FUENTES, HARDIMAN, and ROTH, *Circuit Judges*

(Opinion Filed: August 31, 2012)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge.*

Altor, Inc. ("Altor") and Avcon, Inc. ("Avcon") (collectively, "Appellants") ask this Court to reverse an Occupational Safety and Health Review Commission's (the "Commission") April 26, 2011 decision and order.  Appellants argue that the Commission erred by (1) concluding that Altor and Avcon constituted a "single employer" under the Occupational Safety and Health Act (the "OSH Act"), (2) assessing separate penalties for six similar, willful fall protection violations; and (3) increasing an Administrative Law Judge's penalty assessment to the amount the Secretary initially sought.  For the reasons stated below, we will affirm.[1]

**I.**

_____

[1]  The Occupational Safety and Health Review Commission had jurisdiction under sections 10(a) and 10(c) of the OSH Act.  29 U.S.C. § 659(a), (c).  We have jurisdiction pursuant to 28 U.S.C. § 660(a).

Because we write primarily for the parties, we set forth only the facts and history relevant to our conclusion.

Altor and Avcon were New Jersey corporations engaged in the business of poured-in-place concrete construction. Vasilios ("Bill") Saites was the president and director of both companies. He was also a minority shareholder (49%) in Avcon, and his wife, Cornelia Saites, held a 51% majority in Avcon. The record does not indicate who owned Altor. Bill Saites' son, Nicholas ("Nick") Saites, was an attorney licensed in New Jersey who provided legal advice to both companies. Nick Saites was the director of Altor during its incorporation, but relinquished that role. During the period relevant to this case, Nick Saites was also a superintendent and worksite supervisor for Avcon.

In 1998, Altor contracted with Daibes Brothers, a general contractor, to do the concrete work on a sixteen-story apartment building in Edgewater, New Jersey known as the Mariner High Rise (the "Edgewater Project"). As director of both Altor and Avcon, Bill Saites subcontracted a portion of Altor's work to Avcon, signing the contract on behalf of each company. Pursuant to the contract, Altor provided materials and supplies, and Avcon, which had access to union labor, performed the labor at the Edgewater Project. Altor remained responsible to Daibes Brothers for the concrete work under their initial contract.

Shortly after Edgewater Project construction began, the Occupational Health and Safety Administration ("OSHA") began an inspection of the site. The OSHA inspectors observed numerous fall protection, safety equipment, and administrative safety program violations. OSHA thus issued citations to Bill and Nick Saites—individually and doing

3

business as Altor and/or Avcon—alleging willful, serious, and other than serious violations of OSH Act standards, with proposed penalties totaling $424,000.[2] However, a timely notice of contest was filed, and, by an amended complaint, Altor and Avcon were added as individual respondents.

Altor, Avcon, Bill Saites, and Nick Saites appealed the citations to an ALJ. Since the Secretary's complaint did not allege that Altor was an employer of employees at the Edgewater Project, Altor and Avcon must have been a "single employer" under the OSH Act if they were to share liability for the violations. The ALJ found that evidence established that Altor and Avcon were a single employer because the "companies [had] interrelated and integrated operations with a common president, management, supervision and ownership performing services at a common worksite." App. 81. Additionally, the ALJ affirmed the six willful fall protection violations and did not group them together. However, the ALJ stated that the assessed penalty of $336,000 for the fall protection violations was excessive and issued a combined penalty of $150,000 ($25,000 for each willful fall protection citation).

Appellants then appealed the ALJ's decision to the Commission. The Commission agreed with the ALJ that Altor and Avcon constituted a single employer. In reaching this conclusion, the Commission found that the companies shared a common workspace (the Edgewater Project), were "plainly interrelated and integrated," and "shared a common president, management, and supervision." App. 13-14. The

---

[2] OSH Act violations are characterized as "willful," "repeated," "serious," or "not serious" (referred to by the Commission as "other than serious"). 29 U.S.C. § 666.

Commission also affirmed the ALJ's refusal to group the six willful fall protection violations. However, the Commission set aside the ALJ's penalty assessment and imposed the penalties originally proposed by the Secretary, $56,000 for each willful fall protection citation, or a total of $336,000.

Appellants timely filed with this Court a petition for review of the Commission's order.

## II.

On appeal, Altor and Avcon challenge both the Commission's determination that Altor and Avcon constitute a single employer under the OSH Act and its decision to assess individual penalties for each of the six willful fall protection violations and to increase the ALJ's penalty assessment for these citations.

## A.

It is well established that separate corporate entities can constitute a single employer under the OSH Act. The Act defines "employer" as "a person engaged in a business affecting commerce who has employees." 29 U.S.C. § 652(5). It goes on to define "person" as "one or more individuals, partnerships, associations, corporations, business trusts, legal representatives, or any organized group of persons." 29 U.S.C. § 652(4). Whether multiple entities constitute a single employer under the OSH Act is a question of fact, and the Commission's conclusion must be upheld if supported by substantial evidence. *See* 29 U.S.C. § 660(a); *Bianchi Trison Corp. v. Secretary*, 409

F.3d 196, 204 (3d Cir. 2005); *see also NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 551 (3d Cir. 1983) ("The single employer question is primarily factual, and the Board's conclusion must be upheld if supported by substantial evidence.").[3]

We look to four factors to determine whether multiple separate entities in fact constitute a single employer: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *Al Bryant*, 711 F.2d at 551. While no factor is dispositive, the first three are more significant. *Id.*

Altor and Avcon argue that they were separate entities because each company was engaged in different aspects of the construction business. Altor and Avcon's relationship, however, exhibited a lack of arm's length dealing, and the Commission properly concluded that the companies were a single employer. First, the companies' operations were substantially interrelated. Avcon only performed work pursuant to contracts with Altor, and Altor always remained responsible to the general contractors for Avcon's work. Further, Bill Saites signed contracts for both corporations, and the companies shared a single-room office. Second, Bill Saites was the director and manager of both companies, satisfying common management. Third, labor relations were centralized because Bill and Nick Saites, as representatives for both Altor and Avcon, were the onsite supervisors at

---

[3] The Commission "essentially adopted" the single employer test that was developed by the National Labor Relations Board (NLRB). *See C.T. Taylor Co. v. Esprit Constructors, Inc.*, 2003 OHSHRC LEXIS 43, at *9-*10 (Apr. 26, 2003). Thus, it is instructive to look to NLRB cases to elucidate the single employer concept. Indeed, we have applied the NLRB's test in a wide variety of employment and labor law contexts to determine whether separate entities constitute a single employer. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 486 (3d Cir. 2001) (citing cases applying this test in various employment contexts).

the Edgewater Project and had authority to terminate employees and to enforce safety regulations. Fourth, the Saites family closely held control over Altor and Avcon, and this constitutes common ownership. *See NLRB v. Dane Cnty. Dairy*, 795 F.2d 1313, 1322 (7th Cir. 1986) ("Familial control constitutes common ownership and control."); *accord J.M. Tanaka Constr., Inc. v. NLRB*, 675 F.2d 1029, 1035 (9th Cir. 1982).

Accordingly, we find that the Commission's holding that Altor and Avcon constituted a single employer is supported by substantial evidence.

**B.**

The Commission has wide discretion to assess penalties for OSH Act violations within the Act's statutory allowable range. *See* 29 U.S.C. § 666. Therefore, we will overturn the Commission's penalty assessment only for an abuse of discretion. *See* 29 U.S.C. § 666(j); *Chao v. OSHRC,* 401 F.3d 355, 376 (5th Cir. 2005) ("This Court reviews the Commission's determination of the amount of an OSH Act penalty for abuse of discretion."); *Modern Cont'l Constr. Co. v. OSHRC*, 305 F.3d 43, 53 (1st Cir. 2002).

The OSH Act permits the Commission to penalize willful violations with a fine of between $5,000 and $70,000 for each violation.[4] 29 U.S.C. § 666(a). The Commission must "giv[e] due consideration to the appropriateness of the penalty with respect to the

---

[4] The Secretary has the discretion to charge violations individually or to group them together in the first instance. But, the Commission is then obligated to assess the minimum penalty "*for each willful violation*" that is proved. 29 U.S.C. 666(a) (emphasis added). Insomuch as Altor and Avcon seek a reduction in their total penalty, the available relief is for the Commission to lower the penalty for each willful citation individually (rather than "grouping" the willful violations, as Appellants request).

size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations" when assessing a penalty within the broad statutory range. 29 U.S.C. § 666(j). "The gravity of a particular violation may warrant the assessment of a weighty penalty, even though the employer may rate perfect marks on the other three criteria." *See Modern Cont'l Constr. Co.* 305 F.3d at 53 (internal quotation marks omitted).

Altor and Avcon argue that the six willful fall protection violations should be grouped together and that a lower penalty should be assessed because the companies had less than 100 employees, their employees were only exposed to danger for three weeks, no actual injuries occurred, and the companies did take some level of precaution to prevent falls.

However, the Commission did not abuse its discretion in giving substantial weight to the violations' gravity and assessing a penalty at the upper end of the statutorily allowable range. The six separate fall protections violations were all willful violations. Though it focused its attention on the violations' gravity, the Commission adequately considered all of the relevant factors in assessing the penalty. The record indicates that employees were regularly exposed to risks of falling over 79 feet, a fall that would likely result in death. Accordingly, the Commission did not abuse its discretion in assessing the penalty initially sought by the Secretary.

## III.

For the foregoing reasons, we will affirm the Commission's order.