**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1845
_____

UHS OF WESTWOOD PEMBROKE INC; UHS OF DELAWARE INC,
Petitioners

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, SECRETARY
OF LABOR
_____

On Petition for Review of an Order of the Occupational Safety & Health Review
Commission
(OSHC-1: 17-0737)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 24, 2023

Before: KRAUSE, BIBAS, and RENDELL, *Circuit Judges*

(Filed: May 4, 2023)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

KRAUSE, *Circuit Judge*.

Petitioners UHS of Westwood Pembroke, Inc. (UHS-Pembroke) and UHS of Delaware, Inc. (UHS-DE) failed to prevent patient-on-employee violence at Pembroke Hospital, an inpatient psychiatric facility in Massachusetts. Based on that failure, the Occupational Safety and Health Review Commission imposed liability under 29 U.S.C. § 654(a)(1), commonly known as the "general duty clause," which requires each "single employer" to provide its employees with a workplace "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." *Id.*; *Altor, Inc.*, 2011 WL 1682629, at *5 (O.S.H.R.C. Apr. 26, 2011), *aff'd*, 498 F. App'x 145 (3d Cir. 2012). It also imposed additional penalties under 29 U.S.C. § 666(a) for this "repeat" violation because it followed another violation occurring years earlier at a different UHS-Pembroke facility. For the reasons explained below, we will affirm.

I. **DISCUSSION**[1]

On appeal, Petitioners assert that the Commission erroneously determined (1) that Petitioners constituted a "single employer" for the purposes of the general duty clause; (2) that Petitioners had not implemented all feasible means of reducing patient-on-

---

[1] The Commission had jurisdiction under 29 U.S.C. § 659(c), and we have appellate jurisdiction under 29 U.S.C. § 660(a). We accept the Commission's factual findings unless they are not "supported by substantial evidence in the record as a whole," *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 204 (3d Cir. 2005), and will set aside its conclusions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* (citation omitted).

employee violence[2]; and (3) that the offense here qualified as a "repeat violation."  Each

claim is unavailing.

A.      Single Employer Determination

To constitute a "single employer" for the purposes of a general duty clause

violation, two companies must share "(1) a common worksite; (2) interrelated and

integrated [safety] operations; and (3) a common president, management, supervision, or

ownership."  *Altor, Inc.,* 2011 WL 1682629, at *5 (citations omitted).  Here, the

Commission reasonably concluded that all three criteria were satisfied.

The record supports the Commission's determination of a common worksite

because Pembroke's CEO was a UHS-DE employee, and both the CEO and UHS-DE's

Loss Control Manager worked onsite at Pembroke and were integrally involved in the

hospital's day-to-day operations.  *See, e.g.*, *id.* (finding a common worksite where one

company's president provided "daily supervision" at the worksite of another); *Vergona*

*Crane Co.*, 1992 WL 184539, at *1–2 (O.S.H.R.C. July 22, 1992) (finding a common

worksite where employees "operated out of the same office").  Though Petitioners

contend that two companies cannot have a "common worksite" without mutual access to

a shared hazard, *Advance Specialty Co.*, the case on which they rely, held only that

_____

[2] To establish a general duty clause violation, the Secretary must show: "[1] that a
condition or activity in the workplace presented a hazard, [2] that the employer or its
industry recognized this hazard, [3] that the hazard was likely to cause death or serious
physical harm, and [4] that a feasible and effective means existed to eliminate or
materially reduce the hazard."  *Arcadian Corp.*, 2004 WL 2218388, at *7 (O.S.H.C.R.
Sept. 30, 2004).  Here, Petitioners challenge the fourth element, but do not seriously
dispute that the Secretary has met his burden for the first three elements.

mutual access may be sufficient to establish a common worksite, 1976 WL 22254, at *4 (O.S.H.R.C Mar. 5, 1976), and in any event, the Commission here determined that Petitioners had such mutual access.

The record also supports the Commission's finding of integration "with respect to operations and safety and health matters." *S. Scrap Materials Co., Inc.*, 2011 WL 4634275, at *34 (O.S.H.R.C. Sept. 28, 2011). The Secretary established that UHS-DE was responsible for developing most of Pembroke's safety policies and that Pembroke's CEO, who was employed by UHS-DE, was responsible for ensuring that Pembroke adhered to these policies. UHS-DE also monitored patient aggression at Pembroke and even provided budgetary incentives when Pembroke met certain safety-related benchmarks set by UHS-DE. This is sufficient to meet the applicable standard, which is not "near total control," Pet'rs' Br. 22, but instead whether UHS-DE "possessed and exercised considerable authority over such matters," *S. Scrap Materials Co., Inc.*, 2011 WL 4634275, at *34.

Finally, the record supports the Commission's common management finding. True, the mere fact that UHS-Pembroke and UHS-DE shared an ultimate parent company was not sufficient to establish this factor, as the ultimate inquiry is instead whether "supervision or management at the two subsidiary companies[] . . . [was] shared." *Id*. But supervision and management were shared: As the Commission correctly observed, there was a "direct line of management between Pembroke and UHS-DE that [ran] through the hospital's CEO, who supervise[d] Pembroke's employees and [was] in turn

4

supervised by UHS-DE employees." App. 13. That level of oversight suffices. *See C.T. Taylor Co., Inc.*, 2003 WL 1961272, at \*4 (O.S.H.R.C. Apr. 26, 2003).

In sum, the record reflects a common worksite, integrated safety operations, and common management, and is therefore sufficient to support the Commission's single employer ruling.

## B.        Alternative Means to Reduce Hazards

To establish a general duty clause violation, the Secretary must "specify the particular steps a cited employer should have taken to avoid citation, and [] demonstrate the feasibility and likely utility of those measures." *Nat'l Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257, 1268 (D.C. Cir. 1973). If the Secretary "proposed each measure as an alternative means of abatement," proof that an employer implemented "any one of them would constitute abatement of the alleged violation." *A.H. Sturgill Roofing, Inc.*, 2019 WL 1099857, at \*9 (O.S.H.R.C. Feb. 28, 2019). By contrast, if the Secretary's proposals were each "a component of a single means of abatement, . . . all of the measures must be implemented to abate the violation." *Id.*

Here, the Secretary's proposed means of abatement were both preventative and mitigative in nature, and he successfully persuaded the Commission that each measure, if implemented, would have addressed different root causes of the violence. Petitioners, however, contend that the Secretary has already conceded that his proposed measures were alternatives, *e.g.*, by stating that "*each* of [the] proposed abatement measures would have *independently* provided a material reduction in the hazard of workplace violence." App. 638 (emphasis added). In other words, Petitioners ask us to treat the Secretary's

acknowledgment that each proposed measure could be effective as a concession that each measure was an equally effective alternative. But that position is belied by both logic and Commission precedent: The relevant question is not whether each measure can have a material effect on specific instances of hazards, but instead whether all measures, working together, would prevent a broader universe of hazards. *A.H. Sturgill Roofing, Inc.*, 2019 WL 1099857, at \*9; *see also Nat'l Realty & Constr. Co.*, 489 F.2d at 1266–67 ("[a]ll preventable forms and instances of hazardous conduct must . . . be entirely excluded from the workplace").

The Secretary's proposed measures here fall into the latter category. As the Commission correctly observed, "[t]he Secretary's approach . . . aligns with the nature of workplace violence, which as alleged here arises in different contexts and conditions at Pembroke, necessitating different abatement measures." App. 16. Certain proposed measures, such as ensuring adequate therapeutic equipment (*e.g.*, MP3 players for soothing music), served to proactively prevent patient agitation. Other measures, such as silent panic alarms and additional safety staffing, instead served to mitigate harm once a patient had become agitated. Because these were "by their very terms, cumulative measures that each address distinct aspects" of patient-on-employee hazards, *A.H. Sturgill Roofing, Inc*, 2019 WL 1099857, at \*22 (Attwood, Comm'r, dissenting), the record here supports the Commission's decision.

### C.    Repeat Violation Finding

Finally, Petitioners assert that the Commission erred in finding that the current infraction amounted to a "repeat violation" under 29 U.S.C. § 666(a). The crux of

6

Petitioners' argument is that the Commission erred by not sufficiently considering the dissimilarities in the proposed abatements for each violation. But as Commission precedent makes clear, "similarity of abatement is not the criterion [for repeat violations]; the test is whether the two violations resulted in substantially similar hazards." *Active Oil Serv., Inc.,* 2005 WL 3934873, at *6 (O.S.H.R.C. July 15, 2005). The Secretary must still put forth "evidence regarding the particular circumstances" of each violation, *Gem Indus., Inc.*, 1996 WL 710982, at *6 (O.S.H.R.C. Dec. 6, 1996), but in this case he demonstrated the requisite substantial similarities in, among other things, "the patient-on-staff workplace violence hazard . . . , the nature of the workplace, the individual acts of violence, and the resulting injuries," *see* Answering Br. 50.

## II. CONCLUSION

For the foregoing reasons, we affirm the order of the Commission enforcing the Secretary's citation.